M. A. HENDERSON *v.* JOHN BLAIR ET AL.

[59 South. 856.]

1. SWAMP AND OVERFLOWED LANDS. *Act Cong. Sept. 28, 1850, chapter 84, 9 Stat. 519. Construction. Conveyance by State. Grant to States.*

Under the Act of Congress Sept. 28, A. F., 1850, chapter 84, 9 Stat. 519, 7 Fed. Stat. Ann. 399, granting to the several states in which such lands were situated the swamp and overflowed lands remaining unsold, etc., the issuance of a patent from the general government was unnecessary in order to perfect the title of the state, for title vested immediately upon the passage of the act and became complete upon the identification of the lands.

2. STATUTES. *Construction.*

One of the cardinal rules in the construction of a statute is that the legislative intent must be determined from the view of the whole act with reference to the subject matter to which it applies.

3. SAME.

A legislative grant of lands, acquired by the state from the general government in trust for a public purpose, to a county in furtherance of such purpose, is not a donation, and rules

for the construction of governmental gifts should not be strictly applied thereto. Such a grant does not require for its validity the use of the technical terms found in ordinary conveyances of land, and should be sustained if it can reasonably be done.

4. PUBLIC LANDS. *Grants to states. Conveyance by state. Construction.*

Under Laws of Mississippi, Called Session 1852, page 57, which designates certain named persons as commissioners to select and sell the swamp and overflowed land situated in the county of Monroe for the purpose of reclaiming swamp lands, etc., as amended by its Laws of 1854, page 550, which provided that the commissioners appointed by the Act of October 20th, A. D. 1852, should report to the board of police of Monroe county the number of acres selected by them, etc., and that such board should appoint a swamp land commissioner, invested with full power to sell the land and apply the proceeds to special purposes and expressly divested the state of its title, and vested the title to such lands in the country it was not necessary for the secretary of state to issue a patent to such commissioners in order to vest the title in the county, and such title was not subject to impairment by Constitution 1868, article 8, section 6, establishing a common school fund, consisting of the proceeds of lands granted to the state by the United States, and lands known as swamp lands or the act of 1877 (Laws 1877, chapter 14), revising, amending, and consolidating the various Acts relating to swamp lands.

5. SAME.

The swamp lands in such case having become vested in the county a patent to an individual from the state commissioner was void.

APPEAL from the chancery court of Monroe county.

HON. J. Q. ROBINS, Chancellor.

Suit by M. A. Henderson against John Blair and others. From a judgment for defendant, plaintiff appeals. The facts are fully stated in the opinion of the court.

*Daniel & Adams, Rodgers & Brantley, W. R. Harper* and *Alexander & Alexander,* for appellant.

*Leftwich & Tubb* and *Paine & Paine,* for appellees.

Counsel on both sides filed elaborate briefs but too long for publication.

Argued orally by *C. H. Alexander,* for appellant, and *George J. Leftwich,* for appellee.

SMITH, C. J., delivered the opinion of the court.

Appellant filed his bill in the court below to cancel the claim of appellees to the land in controversy as a cloud on his title. This land was a part of the swamp and overflowed land granted to the state by the act of congress of September 28, 1850, entitled "An act to enable the state of Arkansas and other states to reclaim swamp lands within their limits," and which is in part as follows: "To enable the several states (but not including the state of Kansas, Nebraska, and Nevada) to construct the necessary levees and drains, to reclaim the swamp and overflowed lands therein, . . . the whole of the swamp and overflowed lands, made unfit thereby for cultivation, and remaining unsold on or after the 28th day of September, A. D., eighteen hundred and fifty, are granted and belong to the several states respectively, in which said lands are situated. . . . The proceeds of said lands, whether from sale or by direct appropriation in kind, shall be applied exclusively, as far as necessary, to the reclaiming said lands, by means of levees and drains." Act Sept. 28, 1850, ch. 84, 9 Stat. 519, 7 Fed. Stat. Ann. 399. Shortly after the passage of this act the land in controversy, along with other land in Monroe county, was selected as inuring to the state by virtue of the provisions thereof. This selection was reported to the Secretary of the Interior, but was not approved by him, and no patent was issued to the state, until the 7th day of May, 1907. The issuance of a patent, however, was not necessary in order to perfect the title of the state, for title vested immediately upon the passage of the act, and became complete upon the identification of the land. See cases cited in note to section 2479, 6 Fed. Stat. Ann. 399.

At the various sessions of the legislature held during the years immediately following the passage of this act of congress, numerous laws were passed providing for the sale of this swamp and overflowed land, and the application of the proceeds thereof within the various counties where the land was situated to the purposes prescribed by the act of congress. Among these was one of October 20, 1852 (Laws Miss. Called Sess. 1852, p. 57), which designated certain named persons as commissioners to select and sell the swamp and overflowed land situated in the county of Monroe "for the purpose of reclaiming swamp lands and levee of the Buttahatchie river." In 1854 this statute was amended by an act approved March 21st, which will be found on page 550 of the Laws of that year, by which it was provided, first, that the commissioners appointed the act of October 20, 1852, should report to the board of police of Monroe county the number of acres of land selected by them, how much thereof had been confirmed by the Secretary of the Interior, how much sold, for what sums, and to whom, etc.; second, that when this report should be made their terms of office should expire, and the board of police of Monroe county should then appoint a swamp land commissioner, whose duty it was "so soon as the title to said swamp land is confirmed by the Secretary of the Interior to the state of Mississipi to advertise and sell said swamp land for cash, after giving such notice of the time and place of sale as may be ordered and directed by the board of police of Monroe county," and, further, that it should be "the duty of said swamp land commissioner to apply the proceeds of said sales, under the supervision of the board of police, to the payment of the contractors who shall have, *bona fide,* contracted with the present commissioners and who shall have completed said contract according to the terms and specifications of the same, and said commissioner shall have full power to make title to the purchaser or purchasers

of said land, and the state of Mississippi hereby divests herself of all the title she may have acquired, or may hereafter acquire, to said lands, under the act of 28th September, 1850, and it shall be the duty of the secretary of state to issue a patent to said commissioners so soon as the same is confirmed by the Secretary of the Interior, . . . and should there remain any money from and proceeds of said sale, after discharging the present contracts, the same shall be disposed of by said commissioner under the supervision of the board of police in any manner not inconsistent with the act of congress of 28th September, 1850.'' The board of police of Monroe county, pursuant to this statute, appointed a man named Dillingham as swamp land commissioner, and he proceeded to assume and discharge the duties of that office. No sale of the land in controversy is shown to have been made; the nearest approach thereto being oral evidences that the swamp and overflowed lands in Monroe county had been sold at the county seat thereof by order of a board of supervisors, but no deed was shown to have ever been made by Dillingham, or any swamp land commissioner of Monroe county, to any one to the land. In 1857 this land was assessed to Thomas Sartor, and he and those claiming under him paid taxes thereon until 1879, in which year it was sold to the state for unpaid taxes, and afterwards by the state to Charles Roy, under whom appellees claim by mesne conveyances.

Section 6, article 8, of the Constitution of 1868 provides that ''there shall be established a common school fund which shall consist of the proceeds of the lands now belonging to the state, heretofore granted by the United States, and of the lands known as 'swamp lands,' '' etc. In 1877 the legislature enacted a statute entitled ''An act to revise, amend and consolidate the various acts relative to swamp lands, donated to the state of Mississippi under the act of Congress the 28th of September, 1850'' (Laws 1877, page 33), by which the office of

commissioner of swamp lands was created, for the rea-
son "that the record of land sales now on file in the
office of the secretary of state are in an imperfect condi-
tion, showing repeated conflicting sales, selections," etc.,
and authorizing him "to sell and dispose of said swamp
lands remaining unsold." On the 25th day of Septem-
ber, 1903, appellant purchased the land from the state
land commissioner, successor to the commissioner of
swamp lands, and received from him a deed thereto. His
contention is that the statute approved March 21, 1854,
together with all other statutes providing for the sale of
swamp and overflowed lands and the disposition of the
funds realized therefrom, were necessarily repealed by
the adoption of the Constitution of 1869 and the passage
of the statute of 1877 creating the office of commissioner
of swamp lands, and that since no sale of the land in
controversy is shown to have been made prior to the
adoption of this Constitution and passage of this stat-
ute, the state land commissioner, who is successor to the
commissioner of swamp lands, had full power to sell and
convey the land to him.

The question which lies at the threshold of this case is:
Was the swamp and overflowed land in Monroe county
granted to it by the act of 1854 in such manner as to
become a vested right in the county, not subject to im-
pairment by a subsequent legislature without its con-
sent? One of the cardinal rules in the construction of a
statute is that "the legislative intent must be determined
from the view of the whole act with reference to the
subject-matter to which it applies." 36 Cyc. 1128. And
in *Warren County* v. *Nall,* 78 Miss. 726, 29 South. 755,
it was held by this court that "a legislative grant of
lands, acquired by the state from the general govern-
ment in trust for a public purpose, to a county, in fur-
therance of such purpose, is not a donation, and rules for
the construction of governmental gifts should not be
strictly applied thereto. Such a grant does not require

for its validity the use of the technical terms found in ordinary conveyances of land, and should be sustained if it can reasonably be done.''

Taking this act, then, by its four corners, and viewing it as a whole, with reference to the duty imposed upon the state by the act of Congress under which she received the land, and in the light of the general legislative intent, apparent in all of the statutes dealing with this land, to appropriate it to reclamation purposes within the counties where situated, it seems to us manifest that by it the legislature intended to divest the state of all title to the land and invest it in the swamp land commissioner for the benefit of the county. After creating the office of swamp land commissioner, it invested him with full power to sell and dispose of the land, under the supervision of the board of police, to apply the proceeds to local improvement purposes, and expressly divested the state of all title which she then had or might thereafter acquire. It is true that the secretary of state is directed to issue a patent to the commissioner as soon as the land should be confirmed to the state by the Secretary of the Interior; but this did not have the effect of postponing the vesting of title. The title was divested out of the state and invested in the swamp land commissioner immediately upon the passage of the act, and when the land was afterwards identified in any manner as swamp and overflowed land, the title thereby became perfect without the issuance of a patent. ''The patent would simply be evidence of such an identification and declaratory of the title conveyed.'' *Wright* v. *Roseberry*, 121 U. S. 488, 7 Sup. Ct. 985, 30 L. Ed. 1039; *Tubbs* v. *Wilhoit*, 138 U. S. 134, 11 Sup. Ct. 279, 34 L. Ed. 887; *Fore* v. *Williams*, 35 Miss. 533; *Daniel* v. *Purvis*, 50 Miss. 261.

If this is true, then the right to the land became vested in the county, and was not subject to impairment by any subsequent acts of the state without its consent. *Jackson* v. *Dilworth*, 39 Miss. 772; *Clements* v. *Anderson*,

46 Miss. 581. The patent received by appellant from the state land commissioner is therefore void; and, since he must stand or fall on the strength of his own title, it becomes unnecessary for us to determine what title, if any, appellees may have, that being a question betwen them and the county of Monroe.

*Affirmed.*