SEAL, et al. *v.* ANDREWS, et al.

May 5, 1952.

No. 38332 (58 So. (2d) 504)

Stevens and Cannada, for appellants.

218

Roach & Jones, and **Lipscomb & Ray,** for appellees.

**Arrington, J.**

This is an appeal from the judgment of the Circuit Court of the First Judicial District of Hinds County affirming an order of the Mississippi Public Service Com-

mission. The appellants, Anthony Seal and Olin B. Keith, partners doing business as White Eagle Bus Lines, filed a petition with the Mississippi Public Service Commission alleging that Karey Andrews and W. I. Sones, appellees, partners doing business as McComb City Lines, were engaged in operating as common carrier of passengers for compensation over U. S. Highway 51 between McComb and Magnolia without a certificate of public convenience and necessity authorizing such operations; that said operations were in violation of the Mississippi Motor Carrier Regulatory Act of 1938, Code 1942, Sec. 7632 et seq., and praying for a citation requiring appellees to show cause why they should not be ordered to cease and desist from said operations. Citation was issued; appellees appeared and answered admitting operations as alleged in the petition; denied that their operations were unlawful and charged that the public service commission was without jurisdiction under Sec. 7635, Miss. Code of 1942. At the conclusion of the hearing, the Commission entered an order dismissing the petition for lack of jurisdiction, finding: ''* * * that the transportation of passengers for compensation over U. S. Highway 51 between McComb, Mississippi and Magnolia, Mississippi by the McComb City Lines is legal and proper due to the fact that said operation comes under the exceptions to the motor carrier act of 1938, as amended, as set forth in Sec. 7635, subsection (j), Mississippi Code of 1942.''

The Teche Greyhound Lines (division of the Greyhound Corporation), an authorized common carrier of passengers, etc., over U. S. Highway 51, including McComb and Magnolia, asked to intervene in behalf of petitioners and join in this appeal.

At the hearing before the commission, the evidence, which we deem material here to a determination of this appeal, shows without dispute that the appellee, McComb City Lines, had been conducting local bus service in McComb since February, 1946, under a franchise from the city; that at the request of the municipal authorities

of the City of Magnolia, they began in April, 1946, their operations from McComb to Magnolia and operated within the corporate limits of Magnolia, and have continued operating daily since that time; that they operate to and in the town of Summit and out to Southwest Junior College, which is approximately one mile northeast of Summit. The evidence also shows that U. S. Highway 51 traverses the municipality of Summit, McComb and Magnolia; that the air-line distance between the corporate limits of Summit and McComb is one mile and between McComb and Magnolia is 4.3 miles; that the community of Fernwood (unincorporated) is located between the corporate limits of McComb and Magnolia; that there are located in Fernwood two industries which employ approximately 800 people; that these people live in Magnolia, McComb, Fernwood and the surrounding territory. The evidence further shows that the area between the corporate limits of McComb and Magnolia on Highway 51 is thickly settled, there being 178 residences and 46 commercial establishments. According to the map of Pike County which was introduced in evidence, the population of McComb was 9898 and Magnolia, 2125 (1940 census).

The appellant assigns and argues a number of errors, contending that the lower court erred in affirming the order of the Public Service Commission. However, these may be reduced to one in disposing of the issue here involved. The sole question presented is do the appellees come under the exception in Section 7635, which is: "The term 'motor carrier' as defined in this Act shall not include: * * * (j) Motor vehicles engaged in the transportation of persons or property wholly within a municipality or between contiguous municipalities, or within a zone adjacent to and commercially a part of such municipality or municipalities but not exceeding five miles from the corporate limits; except when such transportation is under a common control, management or arrangement for a continuous carriage or shipment to or

from a point without such municipality, municipalities, or zone.''

This is the first time this question has been before the Court. The order of the Commission heretofore set out held that the operations of the appellees came under the exception to the act and the circuit court affirmed that order on the ground that the operations were within ''a zone adjacent to and commercially a part of such municipality, or municipalities, but not exceeding five miles from the corporate limits.''

The appellant cites the case of Dixie Greyhound Lines, Inc. v. Mississippi Public Service Commission, 190 Miss. 704, 200 So. 579, 581, 1 So. (2d) 489, which was the first appeal to come before the Court involving the Mississippi Motor Carriers Regulatory Act of 1938. In this case the Court said: ''Chapter 142, Laws of 1938, is modeled after the said Federal Motor Carrier Act of 1935 [49 U. S. C. A. § 301 et seq.], and Section 6, subsection (c), of our statute contains an express legislative direction that in administering the act the Public Service Commission shall conform as nearly as practicable to the rules, regulations, requirements, etc., of the Interstate Commerce Commission.''

The difference between the Federal Act and the State Act as to the exemption or exception is that the Federal Act places no limitation on the size of the exempt zone adjacent to and commercially a part of any municipality or municipalities, and the State Act exempts the zone to not exceeding five miles from the corporate limits. Appellant cites a number of Interstate Commerce Commission decisions, among them being New York, New York Commercial Zones, Volume 2, M. C. C., page 191. The proceeding in this case was to fix the limits of the ''zone adjacent to and commercially a part of.'' The Interstate Commerce Commission there said: ''In view of the indefiniteness of the language, the impossibility of any precise definition, and the variety of interpretations which may be placed upon it, we were convinced

that the sound way to proceed, under well-recognized principles of statutory construction, was to interpret the language to the best of our ability in harmony with the purposes of the statute in which it is included, that being the Motor Carrier Act, 1935, designed for adequate Federal regulation of motor carriers * * *. The transportation of passengers or property in interstate or foreign commerce wholly within a municipality or between contiguous municipalities or within a zone adjacent to and commercially a part of any such municipality or municipalities. Those who framed this language clearly had in mind this conception of urban transportation when they used the words 'wholly within a municipality'. They realized, however, that there are many strictly urban communities which, from a governmental standpoint, are made up of two or more municipalities, so they added 'or between contiguous municipalities'. On reflection, it appeared that even these words might not be sufficiently comprehensive, so to cover all contingencies they further added the words 'or within a zone adjacent to and commercially a part of any such municipality or municipalities'. Implicit in the additions, however, is the conception, with which the framers started, of a single and distinctively urban community, 'wholly within' which motor-carrier operations would be of the local cartage or street-bus type. * * * Obviously, as in the case of any other interpretation which might be placed upon the language in question, it cannot be applied with mathematical precision, but requires an exercise of judgment. No line can be drawn with entire accuracy, but it must be drawn to fit the needs and facts of the situation as near as may be and with due regard to the practical administration of the exemption. In defining the limits, we have endeavored to exercise our best judgment in this manner. Boundaries have been used which are definite and well known generally. The character of the terrain and its occupancy have been kept in mind, including

distinctions between the strictly urban community and its suburban residential appendages.''

In the case of Commercial Zones and Terminal Areas, 46 Motor Carrier Cases, page 665, which was a proceeding to fit the zones adjacent to and commercially a part of municipalities, the commission said: ''From the foregoing, it might be concluded that the examiner's proposed findings as to commercial zone boundaries are sufficiently liberal. There are, however, some considerations which point the other way. The war gave new impetus to the tendency of industrial establishments to locate in unincorporated areas adjacent to municipalities, with a consequent expansion of the areas so occupied. Similarly, residential and emergency housing developments which, even when ostensibly temporary, have a tendency to become permanent, have been established somewhat more extensively than heretofore in areas adjacent to municipalities. Local transportation between such industrial and residential developments is of the type intended to be covered by the commercial zone exemption and we conclude that commercial zones generally should be found to be somewhat more extensive than proposed by the examiner. Such conclusion will also tend to eliminate to some extent any confusion which may attend the unavoidable definition or recognition of overlapping zones hereinafter discussed.

''Portland, Oreg., and Vancouver, Wash.—Vancouver and Portland are not contiguous. They are, however, within 4 miles of each other, being separated only by the Columbia River and by an area which until recently was unincorporated but now comprises the municipality of Vanport. Under our findings herein, Vancouver would be included in the commercial zone of Portland which in 1940 had a population of more than 300,000. As already indicated, this result is vigorously opposed by the Vancouver-Portland Bus Company, which operates only between those points, and also by a number of motor carriers of property which operate between the same

points as part of larger operations. All of these carriers hold authority from this Commission covering operations between Portland and Vancouver. They assert that these municipalities are commercially independent despite their proximity to each other. They look with alarm on the possibility of unregulated competition in operations between them.''

The Commission concluded that ''the commercial zone of each municipality in the United States, * * * consists of (1) the municipality itself hereinafter called the base municipality, (2) all municipalities within the United States which are contiguous to the base municipality, (3) all other municipalities within the United States and all unincorporated areas within the United States which are adjacent to the base municipality as follows: (2) When the base municipality has a population less than 2,500, all unincorporated areas within two miles of its corporate limits and all of any other municipality any part of which is within 2 miles of the corporate limits of the base municipality; * * *.''

We are of the opinion that █ it was the intent and purpose of the legislature to exempt from the provisions of the motor carrier regulatory act purely local operations of motor vehicles within an area or zone adjacent to a municipality or municipalities not to exceed five miles from the corporate limits. In Board of Education v. Railroad Co., 72 Miss. 236, 16 So. 489, the Court said: ''It is familiar learning that, in the construction of statutes, courts chiefly desire to reach and know the real intention of the framers of the law, and, reaching and knowing it, then to adopt that interpretation which will meet the real meaning of the legislature, though such interpretation may be beyond or within, wider or narrower than, the mere letter of the enactment. The case in hand affords a striking example of the wisdom of carrying into effect the true meaning of the statute, rather than giving it a strict, literal interpretation.''

In Adams v. Railroad Co., 75 Miss. 275, 22 So. 824, 825, the Court held: "Statutes must receive a reasonable construction, reference being had to their controlling purpose, to all their provisions, force and effect being given not narrowly to isolated and disjointed clauses, but to their plain spirit, broadly taking all their provisions together in one rational view. Neither grammatical construction, nor the letter of the statute, nor its rhetorical framework, should be permitted to defeat its clear and definite purpose to be gathered from the whole act, comparing part with part. And no construction is ever to be adopted which charges the legislature with absurdity, when any other reasonable view can be taken. * * * 'A statute must receive such construction as will, if possible, make all its parts harmonize with each other, and render them consistent with its scope and object.' Ellison v. Railroad Co., 36 Miss. 572. 'The entire statute must be so read that the whole may have a harmonious and consistent operation.' Vinden v. Bowers, 55 Miss. [1] 18. 'In the construction of a statute the object is to get at its spirit and meaning, its design and scope; and that construction will be justified which evidently embraces the meaning and carries out the object of the law, although it be against the letter and the grammatical construction of the act.' Dixon v. Doe, 1 Smedes & M. 70; Pointer v. Trotter, 10 Smedes & M. 537; Board v. Railroad Co., 72 Miss. [236] at page 239, 16 So. 489. 'In determining the proper construction of a statute, the entire legislation on the same subject-matter, its policy and reason, as well as the text of the particular act, must be looked to.' Clements v. Anderson, 46 Miss. [581] 598."

In Wilson v. Y. & M. V. R. R. Co., 192 Miss. 424, 6 So. (2d) 313, 314, the Court held: "The intention and purpose of the Legislature is to be deduced from the whole and every part of the statute taken together—from the words and context—and such a construction adopted as will best effectuate the intention of the law-giver. Koch

v. Bridges, 45 Miss. 247, 257, 258, 259, 261; Roseberry v. Norsworthy, 135 Miss. 845, 100 So. 514, 516; Dreser v. Hathorn, 144 Miss. 24, 109 So. 23, 29; Johnston [Johnson] v. Reeves & Co., 112 Miss. 227, 72 So. 925, 927; Henderson v. Blair, 102 Miss. 640, 59 So. 856; Universal Life Insurance Co. v. Catchings, 169 Miss. 26, 152 So. 817, 819; Virden v. State Tax Com., 180 Miss. 467, 177 So. 784, 785; Alexander v. Graves, 178 Miss. 583, 173 So. 417, 419; and Mississippi Cottonseed Products Co. v. Stone, 184 Miss. 409, 184 So. 428, 431.''

We are of the opinion that there was substantial evidence to support the finding of the Public Service Commission and the judgment of the lower court affirming its order is hereby affirmed.

Affirmed.

**McGehee, C. J.**, and **Hall, Lee**, and **Ethridge, JJ.**, concur.