# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2024-CA-00439-COA

**PAYNE LOGGING, LLC**  **APPELLANT**

v.

**GERALD SMITH AND RHONDA SMITH**  **APPELLEES**

| | |
|---|---|
| DATE OF JUDGMENT: | 03/13/2024 |
| TRIAL JUDGE: | HON. C. MICHAEL MALSKI |
| COURT FROM WHICH APPEALED: | TISHOMINGO COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | WILLIAM JACKSON SIMPSON |
| ATTORNEY FOR APPELLEES: | RICHARD SHANE McLAUGHLIN |
| NATURE OF THE CASE: | CIVIL - PROPERTY DAMAGE |
| DISPOSITION: | AFFIRMED - 10/07/2025 |
| MOTION FOR REHEARING FILED: | |

### BEFORE WILSON, P.J., WESTBROOKS AND McCARTY, JJ.

### WESTBROOKS, J., FOR THE COURT:

¶1. Joyce and Robert Hester hired Payne Logging, LLC to harvest over 200 acres of timber across several parcels of property. During the three-month process of harvesting timber for the Hesters, Payne Logging cut timber on Gerald and Rhonda Smith's neighboring property without permission. The Smiths sued to recover damages for the loss of 1,299 trees. Applying the statutory guidelines found in Mississippi Code Annotated section 95-5-10 (Rev. 2021), the chancery court ordered Payne Logging to pay the Smiths $41,920 in damages. Payne Logging appeals, raising various errors. Finding no error, we affirm.

## FACTS AND PROCEEDINGS BELOW

¶2. Gerald and Rhonda Smith own thirty-six and a half acres of property in Tishomingo

County. Robert and Joyce Hester own a forty-acre parcel of property directly north of the Smiths' land. The boundary line between these two parcels runs due east and west and is approximately one-half of a mile long. In 2022, the Hesters hired Payne Logging to harvest trees over several parcels of land, including cutting timber on the property north of the Smiths' land and on a different parcel south of the Smiths' land. To facilitate access between the Hesters' southern and northern parcels, Payne Logging cleared a wide road diagonally from the Smiths' northern border to a public access road on the southwest corner of the Smiths' property. In addition to cutting the access road through the Smiths' property, Payne Logging harvested a large number of trees along the northern border of the Smiths' property in purported reliance on an incorrectly marked boundary line.

¶3.     At trial, Gerald Smith testified that he encountered Jon Payne more than once prior to the trees being cut. Smith testified that he told Payne not to cut trees on his property and asked Payne if he knew where the boundary lines were. Payne responded that he knew where the lines were. However, on August 11, 2022, Gerald's wife, Rhonda, called Gerald to say that Payne Logging had cut a path through their property. Gerald came home and called Payne out to the property to show him the damage, including that an existing narrow diagonal path previously large enough for only a four-wheeler had been widened to accommodate an 18-wheeler.[1] Smith testified that he showed Payne the correct boundaries of the property.

---

[1] Gerald testified that the road was at least sixteen feet wide. Payne testified that it was ten to twelve feet wide.

¶4.    Rhonda Smith testified, describing her discovery upon arriving home on her lunch break on August 11 to find the road cut through their property. The Smiths walked through their property and took a handwritten tally of how many trees were cut and the diameter of the trees. These notes, along with many photographs, were submitted into evidence. For example, one handwritten page tallied as follows:

*Going in where damage is on left side of roadway entrance:*

*3 trees = 2 trees 4" through*
*            1 tree 2" through*
*3 trees = 6" through*
*1 tree = 8" through*
*1 tree = 6" through*
*1 tree = 6" through*
*3 stumps = 9" through*
*               8" through*
*               7" through*
*1 tree = 4" through*
*3 trees = 3" through*
*1 tree = 8" through*
*10 trees = average 5" through*
*2 trees = 8" through*
*2 trees = 4" through*
*3 trees = 5" through*
*5 trees = 5" through*

The trees had been cut two to three inches off the ground, so Gerald placed a tape measure across the widest part of the stumps to measure the diameters.

¶5.    The Smiths claim that an additional encroachment occurred on August 21, 2022, along the northern border of their property and that most of the timber lost was cut on that day. They took similar notes and measurements to tally the cut trees. They both testified that they

could not count all the trees that had been cut because many of the trees had been piled in a brush area where they were not accessible.[2]

¶6.    Jon Payne testified that all the cutting on the Smiths' property happened on August 11 or the day prior and that the Smiths must have not noticed the cutting along the northern border until August 21.[3] Payne testified that his company thought the trees they were harvesting on the northern border of the Smiths' property were on the Hesters' property, and he said that an incorrect boundary line had been marked by the Hesters' surveyor, not by Payne Logging. Payne testified that the typical way to measure the diameter of a tree would be to wrap a forester's tape measure around the tree, and the tape will indicate the diameter of the tree in inches.

¶7.    Bobby Wren, a timber flagger who also testified, stated that he recommended to Robert Hester that Robert hire a surveyor named Garrett Dendy to survey the property and mark the property line along the northern border of the Smiths' land. After Dendy marked the (purported) boundary line, Wren supplemented the line with more flags so they would be highly visible to the workers cutting trees. Wren also testified about methods for measuring the diameters of trees and indicated that measuring the diameter of a tree stump across the top should produce a similar measurement as the use of a forester's tape wrapped around the tree trunk.

---

[2] Rhonda noted that "it was August and it was snake season."

[3] The Smiths disputed this testimony, stating that they would have noticed such a huge number of trees gone on August 11 when they were tallying the first round of cut trees.

¶8. According to Payne and Wren, the decision to use and expand the existing four-wheeler trail on the Smiths' property was made by Payne Logging employees to bypass a difficult stretch of terrain on the Hesters' property. Payne denied that he had had a previous conversation with Gerald in which Gerald warned him to stay off the Smiths' property. He acknowledged that cutting the access road through the Smiths' property was intentional but explained that there had been a "miscommunication." Payne did not count the number of trees that were cut on the Smiths' property.

¶9. Robert Hester testified that he told his surveyor, Dendy, the property line's location was based on what Gerald Smith had told him, that this included a veer toward a creek. Dendy did not testify. The record does not contain evidence supporting that Dendy conducted a formal survey of the property. Hester, contradicting Payne's testimony, stated that the access road through the Smiths' property already existed and that he did not think that any new trees were cut to expand the path. On rebuttal testimony, Gerald testified that he did show Robert the boundary lines as previously marked by Gerald, Robert's father, and a surveyor named Horace Ledgewood in 1997. Gerald testified that what he showed Robert was accurate to the true boundary line, which runs due east to west and does not veer.

¶10. The east-to-west border line Dendy marked and Payne relied on was, at points, one hundred eighty feet off the actual border between the two properties. Certified surveyor J.T. Strickland testified as an expert for the Smiths. In preparation for trial, Strickland conducted a Class C survey of the property and prepared a plat that showed the correct boundary line

between the Smiths' and Hesters' properties. Strickland testified that the boundary line he identified was consistent with the deeds to the properties and prior formal surveys. Deeds to the properties were admitted into evidence. Strickland determined that 4.62 acres of timber had been cut on the Smiths' property. The plat submitted at trial had a shaded indication of the cut acreage.

¶11.    In total, the Smiths testified that they lost 466 trees with a diameter of seven inches or larger and 833 trees with a diameter of less than seven inches. The chancellor noted it was undisputed that Payne Logging's activities on the Smiths' property were "without prior knowledge or permission." The only dispute was "how many trees were cut and when." The chancellor found the Smiths' testimony to be credible, including that trees were cut after August 11. The court awarded the Smiths a total of $41,920, including $1,155 as statutory damages for reforestation costs, $25,630 for cutting down 466 trees seven inches or more in diameter, $8,330 for cutting down 833 trees less than seven inches in diameter, $5,500 in attorney's fees, and $1,305 in reimbursement of the cost of the Strickland survey.[4]

¶12.    Payne Logging now appeals.

**STANDARD OF REVIEW**

¶13.    "A chancellor's findings of fact will not be disturbed unless manifestly wrong or

---

[4] The final judgment also notes that Payne Logging abandoned a counterclaim it filed arguing that the Smiths intended to build an additional house on their property that would have required the four-wheeler path to be widened and, therefore, that Payne Logging should be entitled to compensation for the service of expanding the path under a quantum merit theory.

clearly erroneous." *Lowrey v. Lowrey*, 25 So. 3d 274, 285 (¶26) (Miss. 2009). Questions of statutory interpretation are reviewed de novo. *Greenville Public Sch. Dist. v. Thomas*, 352 So. 3d 190, 192 (¶6) (Miss. 2022).

## DISCUSSION

¶14.    Mississippi's "statutory penalty for cutting of trees has existed in some form at least since 1822." *Tolbert v. Southgate Timber Co.*, 943 So. 2d 90, 96 (¶20) (Miss. Ct. App. 2006). Our timber trespass statute is Mississippi Code Annotated section 95-5-10 (Rev. 2021), which provides:

> (1) If any person shall cut down, deaden, destroy or take away any tree without the consent of the owner of such tree, such person shall pay to the owner of such tree a sum equal to double the fair market value of the tree cut down, deadened, destroyed or taken away, together with the reasonable cost of reforestation, which cost shall not exceed Two Hundred Fifty Dollars ($250.00) per acre. The liability for the damages established in this subsection shall be absolute and unconditional and *the fact that a person cut down, deadened, destroyed or took away any tree in good faith or by honest mistake shall not be an exception or defense to liability.* To establish a right of the owner prima facie to recover under the provisions of this subsection, the owner shall only be required to show that such timber belonged to such owner, and that such timber was cut down, deadened, destroyed or taken away by the defendant, his agents or employees, without the consent of such owner. The remedy provided for in this section shall be the exclusive remedy for the cutting down, deadening, destroying or taking away of trees and shall be in lieu of any other compensatory, punitive or exemplary damages for the cutting down, deadening, destroying or taking away of trees but shall not limit actions or awards for other damages caused by a person.
>
> (2) If the cutting down, deadening, destruction or taking away of a tree without the consent of the owner of such tree be done willfully, or in reckless disregard for the rights of the owner of such tree, then in addition to the damages provided for in subsection (1) of this section, the person cutting down, deadening, destroying or taking away such tree shall pay to the owner as *a*

7

*penalty Fifty-five Dollars ($55.00) for every tree so cut down, deadened, destroyed or taken away if such tree is seven (7) inches or more in diameter at a height of eighteen (18) inches above ground level, or Ten Dollars ($10.00) for every such tree so cut down, deadened, destroyed or taken away if such tree is less than seven (7) inches in diameter at a height of eighteen (18) inches above ground level, as established by a preponderance of the evidence.* To establish the right of the owner prima facie, to recover under the provisions of this subsection, it shall be required of the owner to show that the defendant or his agents or employees, acting under the command or consent of their principal, willfully and knowingly, in conscious disregard for the rights of the owner, cut down, deadened, destroyed or took away such trees.

(3) All reasonable expert witness fees and attorney's fees shall be assessed as court costs in the discretion of the court.

(Emphasis added).

¶15.    While the Smiths were eligible to be awarded double the fair market value of the trees, they did not submit evidence of the market value. However, the chancery court found that the cutting was done "willfully, or in reckless disregard for the rights of the owner," therefore entitling the Smiths to the prescribed per-tree penalties. Payne Logging raises multiple issues challenging the calculation of the penalties.

**I.       The Smiths submitted competent evidence of the diameters of the trees and numbers of the trees cut.**

¶16.    Payne Logging argues that the Smiths failed to prove, by a preponderance of the evidence, the diameters of the trees as measured from eighteen inches off the ground. Both Payne and the Smiths testified that the trees had been cut as close to the ground as possible. The stumps the Smiths measured were only two to three inches off the ground. Payne Logging argues that this evidence was incompetent to prove that any of the trees had a

8

diameter of seven inches or more, as measured at eighteen inches off the ground, and that the damages should therefore be recalculated at $10 for all trees, such that no tree should be assigned the penalty of $55.

¶17.    The Smiths argue that Payne Logging's interpretation of the statute leads to an absurd result, contending it is not practical to measure the diameter of a tree at eighteen inches when the tree is lying on the ground, having been cut at two to three inches off the ground. If cut trees must be measured strictly at eighteen inches to present credible evidence of what the diameter is at eighteen inches off the ground, then damages, although permitted by statute, would be unreasonably difficult or impossible to establish. We agree. "[N]o construction is ever to be adopted which charges the legislature with absurdity, when any other reasonable view can be taken." *In re B.A.H.*, 225 So. 3d 1220, 1237 (¶55) (Miss. Ct. App. 2016) (quoting *Seal v. Andrews*, 214 Miss. 215, 227, 58 So. 2d 504, 507 (1952)). And the statute contemplates recovery for trees that may have been removed from the property completely and are unavailable to examine.

¶18.    Here, the chancellor heard testimony that the two methods of measurement led to comparable results. The chancellor evaluated the credibility of the witnesses and accepted the Smiths' description of how they measured the trees and the record of their handwritten tally of the numbers and sizes of cut trees they were able to access. The chancellor was charged with evaluating the credibility and accuracy of this evidence, and we defer to the chancellor's findings absent clear or manifest error.

¶19. Payne Logging also disputes whether the numbers of trees the Smiths tallied was accurate. We again defer to the chancellor's findings of fact regarding the numbers of trees cut. The chancellor found the Smiths' testimony to be credible, including that they were unable to count every tree that had been cut. The court evaluated the photographs of the damage as well as the contemporaneous tally that the Smiths meticulously logged by examining each tree in person.

## II. The Smiths submitted competent evidence of their ownership of the property on which the trees were cut.

¶20. Payne Logging argues that the Smiths did not present evidence establishing that the trees they counted on the northern border were, in fact, on their own property. "In boundary disputes, a determination of the legal boundary between properties is a question of fact for the chancellor." *Kleyle v. Mitchell*, 736 So. 2d 456, 459 (¶8) (Miss. Ct. App. 1999) (citing *Farris v. Thomas*, 481 So. 2d 318, 318 (Miss. 1985)). "The same standard applies to questions involving the accuracy of a survey." *Id.* (citing *Hicks v. Bolton*, 223 So. 2d 522, 522 (Miss. 1969)). "Where there is substantial evidence to support the chancellor's findings, this Court is without the authority to disturb his conclusions[.]" *Muirhead v. Vaughn*, 878 So. 2d 1029, 1030 (¶8) (Miss. Ct. App. 2004).

¶21. The chancellor heard the testimony of the Smiths' expert surveyor, who submitted a plat indicating the northern boundary line of the Smiths' property and testifying to the acreage cut. The court found "the Strickland survey to be accurate and the common property line to be situated as reflected thereon." Further, the court found that "the line flagged by

10

Dendy and Wren, in the location pointed out by Hester, was incorrect and was actually on the Smiths' property." The chancellor also heard the Smiths' testimony that they were aware of the location of the northern boundary of their property and that they tallied the cut trees within that area. Considering all this evidence together, the chancellor found the Smiths' calculations of the numbers of trees that had been cut on their own property were credible.

¶22. The court concluded, based "upon the evidence and the credibility of the Smiths and their surveyor," that "the Smiths prove[d] by clear and convincing evidence that trees they owned were cut down, deadened, destroyed and/or taken away by Payne Logging and its employees, without the Smiths' consent." The chancellor did not err in accepting the Smiths' testimony and the official survey to make a factual determination that the trees the Smiths represented had been cut on their property were, in fact, on their property. The chancellor sat as the finder of fact, and we defer to those findings here.

### III. The circuit court did not err in declining to apportion fault among absent parties.

¶23. Payne Logging argues that the chancellor erred in failing to apportion fault among absent parties. Pretrial, Payne Logging moved to file a third-party complaint, arguing that the boundary line between the Hesters' and Smiths' properties was set by Robert Hester and Garrett Dendy. However, the docket does not indicate that Payne Logging noticed this motion for a hearing. The evidence available to the chancellor at trial supported his ruling against Payne, including the chancellor's finding that the Smiths' testimony was credible over Payne's when their testimony was contradictory, and the evidence supports the

11

chancellor's finding "that Payne Logging continued cutting trees on the Smiths' property after being shown the correct location of the property line." Based on the evidence before it, the chancellor did not err in not apportioning fault to absent parties.

## CONCLUSION

¶24.     The Smiths submitted evidence of the numbers of trees, the diameters of the trees, and the ownership of the property from which the trees were cut. The chancellor did not err in his determination of the competency and credibility of the evidence. We therefore affirm the judgment of the chancery court.

¶25.     **AFFIRMED.**

**BARNES, C.J., CARLTON AND WILSON, P.JJ., McDONALD, LAWRENCE, McCARTY, EMFINGER, WEDDLE AND LASSITTER ST. PÉ, JJ., CONCUR.**