# RUSSELL *v.* RUSSELL.

(Division A. May 12, 1930. Suggestion of Error Overruled June 9, 1930.)

[128 So. 270. No. 28625.]

**Amis, Dunn & Snow**, of Meridian, for appellant.

Jacobson & Cameron, of Meridian, for appellee.

Argued orally by **Ed. Snow**, for appellant, and by **Chas. B. Cameron**, for appellee.

**Smith, C. J.**, delivered the opinion of the court.

The appellee sued her husband for divorce and alimony and for the custody of their only child, an infant. A motion was made by her for alimony pendente lite and for an attorney's fee, the decision of which was deferred to the final hearing. The decree dissolved the bonds of matrimony, awarded the appellee the custody of the child, fifty dollars per month as permanent alimony, fifteen dollars per month for the support of the child, and an attorney's fee of two hundred fifty dollars. The record does not disclose that the motion for alimony pendente lite was passed on. The ground on which the divorce is sought is the seventh provided by section 1669, Code of 1906, section 1479 of Hemingway's 1927 Code; i. e., habitually cruel and inhuman treatment. The appellee's evidence in support of this charge is, in substance, as follows: The parties were married in Meridian in April, 1920. Both of them were then at work, the appellee as a stenographer and the appellant as a flagman on a railroad; his run being from Meridian to Birmingham and return. Each continued at work. They lived after their marriage in the home of the appellee's mother along with other members of the mother's family. In 1923 the appellant became dissatisfied with the way in which the appellee was spending their money, and, after quarreling with her because thereof, left her and remained away about a month, during which time he published notice that he would not be responsible for credit extended to the appellee. At the expiration of this month,

he returned to the appellee and acknowledged that he was in the wrong. At his request and on his insistence an agreement was then entered into by which the monthly earnings of the appellant and the appellee were to be pooled, and their living expenses, the premiums on the appellant's life insurance, and some other minor expenses were to be paid out of the aggregate of their earnings, and the remainder was then to be divided equally between them, each paying his or her own personal expenses. The appellee was earning one hundred fifty dollars a month and the appellant earned from one hundred seventy-five to two hundred dollars a month. Under this arrangement both of them saved money.

The appellee had two diamond rings valued at seven hundred fifty dollars which the appellant had given her before their marriage, one as an engagement ring and the other as a Christmas present. After their first separation, the appellant took possession of the rings and would not surrender them to the appellee until she agreed in writing that they belonged to him and would be returned to him should she "fail to move or go with him to any home that he might request her to go, or fail to cooperate with him as a wife." They continued to live with the appellee's mother for about eight years, when they moved to other quarters and remained there until their separation. The appellant charged the appellee not to permit any of her relatives to visit them. To what extent this injunction was insisted on does not appear. During the eight years they lived with the appellee's mother, the appellant remained away from home two or three times in addition to the first hereinbefore referred to, each time for about a week. The reason therefor does not clearly appear, but seems to have been, according to the appellee, because of some unreasonable dissatisfaction with her on his part.

The appellant drank intoxicating liquors, but to what extent does not appear, and the appellee could recall only two specific instances of his being under the in-

fluence thereof. The parties were without children until May, 1928, when their one and only child was born. This child is still living. A short time prior to the birth of the child and when the appellant knew that that event was soon to occur, he, while intoxicated, took the appellee for an automobile ride, and over her protest drove farther and at a greater rate of speed than she desired, and collided with another automobile, shaking up, but not injuring, the appellee or causing her any after inconvenience. The child was born in a hospital, and the appellant neglected her while she was there, and on one occasion expressed regret that the child had been born. The appellee told of some other conduct of the appellant which indicated a lack of consideration for her by him, and it is reasonably clear from her testimony that her association with the appellant was at times disagreeable.

On May 31, 1929, the appellant came in from his railroad run, prepared to take a bath, and carried the child into the bathroom with him. He was then to some extent under the influence of whisky. The appellee objected to his taking the child into the bathroom, and took it away from him. What occurred when the appellant came out of the bathroom can best be told in the appellee's own words: ''When he came back through the house he told me to go and fix his supper. I told him his supper was ready. I put it on the table and I told him that I didn't like to be talked to like that. When I went to put his supper on the table, just before I got to the kitchen, he says, 'Why don't you go where you started to go?' I told him that I didn't have to go anywhere. He says, 'No, you know which side of your bread is buttered— you can just go, I don't care.' I told him that he told me to go and I would go, but I told him that I couldn't go that night on account of the baby's bottle and milk and his clothes, but that I would sure go in the morning. He said that I had better not meet him in the divorce court. that no one would believe anything that my folks would

say.  As I went from the kitchen back in the room he followed me and said that he wanted to thrash the thing out right then and there, but he finally let me alone and I went and got the baby and put him to bed.  The next morning he told me if I went that I had better get all the baby's bottle and things, and to get his papers out of the bank box, if I didn't that he would embarrass me.  The morning after he called me to get his breakfast, but I told him that I didn't prepare him any more meals.''

The appellee then left the appellant, and has since remained away from him, during which time the appellant has paid certain expenses incurred by the appellee on behalf of the child, but has not contributed anything to the appellee's support.

The appellant's evidence contradicts some of the statements made by the appellee, and, if true, reduces to some extent the rudeness that appears therefrom in his conduct, and indicates that his reason for leaving the appellee temporarily on the occasions testified to by her was because she would not go with him to Birmingham to live.  The appellee denies that he requested her to go there with him.  The appellant in his answer and evidence states that he desires the appellee to return to him, and that he still retains their apartment in which they were living when she left him.

Accepting the evidence of the appellee as true, it discloses that the appellant was not without fault, and that he indicated to the appellee he would approve her leaving him, resulting in rendering her unhappy and her marital bond irksome, but for that alone the law of this state does not sanction a divorce.  Cruel and inhuman treatment, unaccompanied by personal violence, within the meaning of the statute, is such conduct only as endangers life, limb, or health, or creates a reasonable apprehension of danger thereto, thereby rendering the continuance of the marital relations unsafe for the unoffending spouse, or such unnatural and infamous conduct as would make the marital relation revolting to the un-

offending spouse and render it impossible for him or her, as the case may be, to discharge the duties thereof, thus defeating the whole purpose of that relation. Crutcher v. Crutcher, 86 Miss. 231, 38 So. 337; Humber v. Humber, 109 Miss. 216, 68 So. 161; McNeill v. McNeill, 125 Miss. 277, 87 So. 645; 19 C. J. 44. The divorce should not have been granted.

The penalty of the appellant's appeal bond, which is in form a bond for a supersedeas, is five hundred dollars, and therefore less than double the amount of the decree thereby superseded. The appellee filed two motions in this court, one for an increase in the penalty of the bond, and another asking for an allowance for attorney's fees in this court and for alimony pending the appeal. By agreement both motions were submitted with the case on its merits. As the decree of the court below must be reversed in so far as it allows alimony, no good would be accomplished by directing the appellant to increase the penalty on his bond.

The appellee is entitled to alimony pending the appeal in this court and to a fee for her attorney here; the reversal of the decree of the court below having no bearing thereon. This alimony will be filed at sixty-five dollars per month while the appeal is pending, beginning on the date of the filing of the appellant's appeal bond, this amount to cover also the support of the child. An attorney's fee in this court of one hundred twenty-five dollars will also be allowed. The decree of the court below will be reversed except in so far as it awards the appellee an attorney's fee of two hundred fifty dollars, and the bill will be dismissed. In so far as the decree awards the appellee an attorney's fee, it will be affirmed.

Reversed in part, and affirmed in part.