PRICE *v.* PRICE.

(Division A. March 28, 1938. Suggestion of Error Overruled May 9, 1938.)

[179 So. 855. No. 33029.]

Neill & Townsend and Johnson & Allen, all of India-nola, for appellant.

F. E. Everett and J. M. Forman, both of Indianola, for appellee.

Argued orally by **S. D. Neill**, for appellant, and by **F. E. Everett**, and **J. M. Forman**, for appellee.

**McGowen, J.,** delivered the opinion of the court.

On February 23, 1936, Will A. Price, appellee, filed a bill for divorce from his wife, Mrs. Odene Latham Price, appellant, relying upon section 1414, seventh cause, Code 1930, habitually cruel and inhuman treatment. Immediately the chancellor ex parte granted an injunction restraining the wife from returning to her home or interfering with the husband's custody of the child, and allowing her temporary alimony for her support. Appellant thereupon filed an answer denying the material allegations in the bill, and also sought a divorce from appellee, her husband, on the same ground as alleged by appellee. Upon hearing the evidence, the court below granted the husband a decree of divorce and the custody of their child; and awarded the appellant, the wife, alimony and attorney's fees, but dismissed her cross-bill. She appeals from this decree.

It is insisted by the appellant that the court below erred in granting the appellee, her husband, a divorce; in awarding the custody of the child to the father; in refusing to grant her a divorce; and in allowing her insufficient alimony, and in connection with the latter allowing certain evidence purporting to show that her husband did not own valuable real estate.

We shall not undertake to detail the evidence from the voluminous record, which reveals that each of the parties seeks to throw the blame for wrongs, real or imaginary, on the other.

The parties were married on May 10, 1931. About ten months later there was born to them a child, a boy. The evidence reveals, undisputedly, that she was badly lacerated from childbirth, and that it was necessary for the physician to give her the required surgical treatment

therefor; that soon thereafter she developed twin goiters and had them removed by an operation; that thereafter she was, again sick and had to spend some time in the hospital; and that about a year afterwards she had to undergo an operation for the removal of one of her ovaries and otherwise have medical and surgical care.

It is further undisputed that after the birth of the child she became highly nervous, so much so that she and her husband had a serious quarrel on one occasion when she undertook to drive a car alone for a few miles. Along through their married life until the date of the filing of the bill, the husband described their daily life as filled with "big fusses."

The main ground upon which appellee, the husband, predicates his right to divorce is upon the ground of habitually cruel and inhuman treatment in that appellant, his wife, spoke of him as a "son of a bitch" and called the other members of his family vile, unrepeatable epithets, and provoked him beyond endurance with the use of such language throughout their married life; and from what we can gather from the record these quarrels were of a more frequent and intense nature after she had been operated on for goiter, which was in either 1932 or 1933.

As to the effect of her language upon the appellee, the only statement made by him was that it so disturbed and distracted him in mind that he could not effectively attend to his business—that of managing a farm which belonged to him, his mother, and sister, and for which management he received a salary. He further testified that on three occasions she threatened to get a knife and cut his throat if he went to sleep. There is no evidence, however, that she ever attempted to carry out the threat.

The immediate cause of the separation, as stated by the appellee, was that the husband and wife had gone together to a party at the home of a friend; after returning to their home from the party, appellant flew into a rage and accused her husband of attempting to be inti-

mate with one of the young women attending the party. His testimony tended to show that she was jealous of his attention to any woman, though it is not stated that she charged him with actual infidelity.

Appellee was a member, and a superintendent of the Sunday School, of one of the leading churches in his community; and witnesses as to his character stated that he was a man worthy of being intrusted with the care and training of a six year old child. His mother only corroborated his testimony as to the appellant's outbursts of angry passion and as to having heard her say ''damn'' on one occasion. Likewise he was corroborated in his statement that the child was whipped capriciously by the appellant when she was in a petulant mood.

The wife, by her testimony, charged that her husband made excessive and unusual sexual demands of her when such relations were improper and detrimental to her health. Her testimony, in general, showed that she was in good health and perfectly normal until the birth of the child, and that since that time and on up to the date of their separation, she was ill and highly nervous during that period of her married life. She testified as to various operations having been performed and various treatments by physicians extending to Christmas of 1936; that her husband frequently cursed her; that they drank together on one occasion, but she specifically denied the use of the vile epithets which he testified that she had used.

She testified further that about Christmas of the year she was operated on for goiter they had a quarrel, during which he struck her. She also stated that shortly before their separation, after she had returned from Memphis, Tenn., where appellee had taken her to an expert on mental trouble, they became involved in a quarrel as to whether or not their child should not go to bed at once, and that on that occasion he beat her unmercifully, bruising and blacking her eyes; that about 4 o'clock

in the morning she made her way to her mother's home, where she showed the bruised portions of her body to her mother; and that a physician was called in to treat her. During that quarrel she said she cursed him and told him that he would never have beaten her if her own folks had been available, and that if he ever did so again she would "cut his throat from ear to ear with a knife." With reference to this quarrel, appellee assigns another reason therefor, but admitted that he hit her, using the language, "I hit her—I hit her," because of the vile epithets hurled at him and members of his family by her. As to this occasion, appellant's mother corroborated her testimony as to the time her daughter arrived at her home bruised and showing evidence of having been maltreated; and that she took her daughter back to the home of her husband, who admitted that he had done wrong and was repentant therefor. Appellant was further corroborated in her statement in that appellee admitted that he had a doctor with her for two days after he struck her. Appellant frankly stated that her husband had always been true to her, and that she became jealous of him only at the time of her pregnancy.

The appellant, during her married life, was a member of the same church as the appellee, attended the same Sunday School, and was secretary of a class therein. Her neighbors testified that she was morally and otherwise fitted to have custody of her child.

Appellee, at the close of appellant's testimony, denied that he made such excessive sexual demands of the appellant as to be bestial. He did not deny that he cursed her frequently during their married life, nor did he deny specifically that he struck her on the occasion of the Christmas after she had been operated on for goiter, but gave an entirely different version of that occasion, justifying himself. He did not deny that he admitted his wrongdoing on Christmas, 1936, to the mother and the wife.

From the time of the Christmas, 1936, episode until the date of the filing of the bill for divorce by the appellee, both of them lived together. One thing that is quite clear is that the husband made up his mind to ask for a divorce after the appellant accused him of desiring to be intimate with a young woman at the party heretofore mentioned, and that he did file his bill the day thereafter.

The authorities in this state, and elsewhere, treating the question of divorce upon the ground of habitually cruel and inhuman treatment, have been summarized, and the rule to be followed announced in the case of Russell v. Russell, 157 Miss. 425, 128 So. 270, 272, wherein this court said: "Cruel and inhuman treatment, unaccompanied by personal violence, within the meaning of the statute, is such conduct only as endangers life, limb, or health, or creates a reasonable apprehension of danger thereto, thereby rendering the continuance of the marital relation unsafe for the unoffending spouse, or such unnatural and infamous conduct as would make the marital relation revolting to the unoffending spouse and render it impossible for him or her, as the case may be, to discharge the duties thereof, thus defeating the whole purpose of that relation. Crutcher v. Crutcher, 86 Miss. 231, 38 So. 337; Humber v. Humber, 109 Miss. 216, 68 So. 161; McNeill v. McNeill, 125 Miss. 277, 87 So. 645, 19 C. J. 44. The divorce should not have been granted."

There was no evidence that the epithets applied to the appellee by his wife during the course of their married life endangered life, limb, or health, or created in him a reasonable apprehension of danger therefor.

We must say also that although the epithets applied to the family of the appellee and himself were vile, and provocative of intense anger, still that language cannot be brought within any definition of unnatural and infamous conduct, a clear idea of which may be found in Crutcher v. Crutcher, supra; so that, as a matter of law, assuming that the chancellor found the facts in favor

of the husband as to the language, such epithets, under the circumstances of this case, do not bring it within the meaning of habitually cruel and inhuman treatment. This conclusion is reached in view of the fact that it is undisputed in this record, and stands undenied, that on two occasions, one a short time before the separation and the other some two or three days before that time, he whipped the appellant, severely the last time, but repented thereof and both resumed the marital relation thereafter.

The whole record discloses that she was in fault because of her highly nervous condition induced by sickness and subsequent operations, and that she indulged in violent outbursts of anger; but the record also reflects that there were many of these occasions, termed ''big fusses,'' throughout appellee's testimony. In Ammons v. Ammons, 144 Miss. 314, 109 So. 795, it was held that where the complaining spouse materially contributes to bringing about the status on which such party relies to obtain a divorce, such spouse will not be entitled to a divorce.

In the case of Long v. Long, 160 Miss. 492, 135 So. 204, this court held that where both husband and wife provoked the alleged acts of cruelty, neither is entitled to a divorce on that ground; therefore, we conclude that the chancellor found the weight of evidence to be that she applied the vile epithets to the appellee and his family, yet did not believe her denials thereof, still under the facts of this case the bill for divorce of the appellee, the husband, should have been dismissed.

On the cross-bill, since the chancellor dismissed it, we cannot say that he was manifestly wrong. The undisputed evidence is that during the Christmas holidays of 1936 he beat her unmercifully. But if the chancellor believed she applied the vile epithets to the appellee, although the cruelty to her was marked by violence, there was provocation therefor. Moreover, the appellee re-

pented, admitted his wrong, and resumed the marital relation with appellant. Had the chancellor seen fit to have granted the appellant, the wife, a decree for divorce, we perhaps could not have reversed the cause. With these conclusions, we will reverse the decree for divorce granted the appellee and dismiss the bill, and we will affirm the decree of the chancellor dismissing the cross-bill, leaving the status of the parties as it was on the day the proceedings were instituted.

In view of the fact that we think the evidence shows that appellee had an income of $4000 or $5000, we will allow the appellant, on her motion in this court therefor, the sum of $200 as fees to her for prosecuting this appeal. Such fees will be allowed the wife, although the husband be granted a divorce. Winkler v. Winkler, 104 Miss. 1, 61 So. 1, Ann. Cas. 1915C, 1250.

Reversed and original bill dismissed; and decree of chancellor on cross-bill affirmed.