CUMMINGS *v.* CUMMINGS.

Apr. 7, 1952.

No. 38312 (58 So. (2d) 39)

Clay B. Tucker, for appellant.

Roach & Jones, and Gordon & Gordon, for appellee.

Arrington, J.

This appeal is from a decree of the chancery court of Wilkinson County granting a divorce to the appellee, Enoch McClain Cummings. The appellant assigns as

error (1) that the court erred in not granting a continuance on account of the absence of the appellant due to illness; and (2) that the chancellor erred in granting a divorce on the ground of habitual cruel and inhuman treatment. The record herein shows that the appellant, on February 15, 1949, filed a bill for divorce against appellee on the grounds of habitual cruel and inhuman treatment, and for injunctive relief as follows: "* * * that complainant be granted a temporary injunction restraining the defendant from further occupying the dwelling of complainant and further restraining the defendant from interfering with the defendant in the use of said dwelling and in the operation of the Victory Cafe. * * *"

On May 16, 1949, the appellee filed an answer and cross-bill praying for a divorce upon the ground of habitual cruel and inhuman treatment and also prayed for a property settlement. A hearing was held in vacation wherein the property issue was settled and a final decree entered, from which there was no appeal. On August 8, 1950, at the instance of appellant, a decree was entered dismissing her bill of complaint. At the December term of the Chancery Court of Wilkinson County, the appellee appeared on Tuesday, December 5, for trial on his cross-bill seeking the divorce. The appellant was not present and her attorney who filed the bill of complaint and who is her attorney here, stated to the court that he did not know whether he was employed or not and asked for time to communicate with appellant to ascertain her wishes. The court passed the case until Wednesday morning. On that day, the appellant appeared and asked for time to subpoena witnesses and prepare for trial. The court passed the case until that afternoon, but it was not reached for the reason the court was trying another cause. The following day, Thursday, the appellant did not appear but sent a letter to the court from a doctor advising that she was ill and would not be able to leave her home for at least a week. The court continued the case until the next day, Friday, December

8, and after hearing witnesses, including the doctor, on a motion for continuance, the same was overruled and the cause proceeded to trial.

It is true that the doctor testified that due to the appellant's condition it would be detrimental to her health to appear in court, and testified further that she came to his office in Liberty on Wednesday evening, and that she had a four-fifths degree of temperature. Upon being questioned by the court, the doctor testified as follows: "She told me 'Am I able to go to Court?' I said 'Do you have to go?' and she said 'Not if there's any danger in it'. I said 'I didn't know anybody had to go with that much fever. You better go home and go to bed.' Then she told me 'Will you write a letter to that effect?' " He also modified his testimony to some extent by stating that she *might* permanently impair her health by coming to court. The evidence also shows that the appellant did not have any fever on the day of the trial, that she got up and opened the door at her home for the doctor and that she talked a number of times over the telephone. She did not have a bedside telephone. Her daughter, Mrs. Stafford, who testified in behalf of her father, the appellee, on the merits, said that her mother was not ill, and she based her opinion on the fact that she had talked to her that day over the telephone, although she had not seen her. The evidence shows that appellant lived at Centreville, about a twenty minute drive to the courthouse at Woodville. The chancellor, no doubt, being familar with all the facts in this case applied his own knowledge of what had occurred prior to the time the motion was made, concluded that the appellant did not want a trial and that she was not too ill to attend the trial.

The appellant did not file a formal application for a continuance and she was not required to do so under Section 2737 of the Code of 1942: "The proceedings to obtain a divorce shall be by bill in chancery, and shall be conducted as other suits in chancery, except that

\* \* \* (5) the court shall have full power in its discretion to grant continuances in such cases without the compliance by the parties with any of the requirements of law respecting continuances in other cases."

An application for a continuance is addressed to the sound discretion of the trial court and in the absence of abuse of this discretion, this Court will not reverse his finding. From the evidence in this case, we are of the opinion that the trial court did not abuse this discretion in denying the motion for continuance.

The appellant contends that the cross-bill does not contain sufficient averments to sustain a charge for divorce on the ground of habitual cruel and inhuman treatment. ▪▪▪ The cross-bill charges: "\* \* \* cross complainant has noted an indifference, lack of affection and consideration for your cross complainant on the part of the cross defendant and it has been difficult for him to understand the actions on the part of the cross defendant towards him; that she has within said period of time bestowed her affections upon another man and has protected him in their own home, and has sought his company almost constantly; and that coupled with the lack of affection for your cross complainant, cross defendant has nagged, fussed and become irritable with your cross complainant; has insulted him with vile and harsh language from time to time embarrassing him among his friends and relatives; has been away nights and has cursed and abused your cross complainant and has threatened to do him great bodily harm. Your cross complainant charges that such treatment on the part of the cross defendant towards him has caused him to suffer from nervousness to spend sleepless nights and has undermined his health to the extent that such treatment amounts to habitual cruel and inhuman treatment and your cross complainant believes that he is entitled to a divorce from cross defendant." We deem the averments sufficient.

The evidence in this case shows that the parties to this

suit were married February 29, 1920, and that as a result of this union, they reared five daughters, all of whom were adults at the time of the hearing of this cause. One of these daughters testified on the merits of the cause in behalf of her father, the appellee. The testimony in this case shows that prior to the filing of appellant's bill of complaint, she used vile, abusive and insulting language towards the appellee and threatened to kill him, and that this conduct on her part was more or less at regular intervals. The evidence further shows that the third party involved in this proceeding was her constant companion, more or less day and night, and her conduct with the third party, although he charged no acts in violation of the law, was very indiscreet; that her conduct caused him mental distress to the extent that his health was affected and vitally impaired. The testimony of Mrs. Stafford, a daughter of the parties to this proceeding, corroborated her father's testimony.

In Amis on Divorce and Separation in Mississippi, Sec. 110, it is said: ''And if one spouse should become infatuated and engage in a clandestine flirtation, or in lewd or lascivious conduct with a third person, or even in acts of adultery, such conduct alone is not an act of cruelty to the other spouse. But if done for the purpose of arousing the jealousy of the other spouse, and causing him or her to suffer mental pain on account thereof, or if after discovering that the other spouse is aware of such conduct and is mentally distressed by reason thereof, he or she continues such conduct, with a wanton or reckless disregard of the feelings of the other spouse, the act is one of cruelty. In other words, so long as the offending spouse thinks he or she is hiding his or her guilt from the other, there is no intent to cause mental distress to the other, and consequently such conduct cannot be cruel, however, reprehensible it may be; but it is otherwise when an intent to cause suffering or a reckless indifference to suffering, appears.''

The rule as announced in Russell v. Russell, 157 Miss.

525, 128 So. 270, 272, with reference to cruel and inhuman treatment, is: ██ █ "Cruel and inhuman treatment, unaccompanied by personal violence, within the meaning of the statute, is such conduct only as endangers life, limb, or health, or creates a reasonable apprehension of danger thereto, thereby rendering the continuance of the marital relation unsafe for the unoffending spouse, or such unnatural and infamous conduct as would make the marital relation revolting to the unoffending spouse and render it impossible for him or her, as the case may be, to discharge the duties thereof, thus defeating the whole purpose of that relation. Crutcher v. Crutcher, 86 Miss. 231, 38 So. 337; Humber v. Humber, 109 Miss. 216, 68 So. 161; McNeill v. McNeill, 125 Miss. 277, 87 So. 645".

We have carefully examined all of the testimony relating to the habitual cruel and inhuman treatment complained of and we are of the opinion that there was ample proof to sustain the finding of the chancellor in favor of the husband on that issue, and the decree of the lower court is accordingly affirmed.

Affirmed.

McGehee, C. J., and Hall, Lee and Holmes, JJ., concur.