McBroom *v.* McBroom.

May 19, 1952.

No. 38434 (58 So. (2d) 831)

E. L. Bliss, for appellant.

John W. Prewitt, for appellee.

**Roberds, P. J.**

Appellant, as complainant in the lower court, filed a bill for divorce against appellee, defendant below, on the ground of habitual cruel and inhuman treatment. Section 2735, Mississippi Code 1942. When complainant rested her case defendant moved for dismissal of the bill on the ground that the evidence had not established the alleged grounds for divorce. The chancellor sustained the motion. The correctness of that ruling is the only question before us.

Defendant offered no evidence; therefore, the testimony for complainant, except where unreasonable, should be accepted as true, with the natural and reasonable inferences therefrom. Complainant and her father

testified. Summarized, that evidence discloses that complainant was twenty-one and defendant twenty-three years of age at the time of the trial in September 1951. They were married November 3, 1950. They seem to have gotten along fairly well for about a month. Complainant testified that her husband was over-sexed; that he was insanely jealous; that he wrongfully accused her of going with other men; that there was no truth in this; that he was jealous of her own brother; that he became angry in a theater and struck her; that he was of very high temper; that "he has come to the house and thrown fits—kicked the post off the porch;" had threatened to kill her; had gotten drunk and remained out all night; and that his conduct greatly humiliated her in public. They separated after two months of married life; she returned to him on his promise to do better, but he became more abusive, and after about two more months they separated again; that he then promised to mend his ways and she returned to him but they then lived together only about a week; that as a result of all of this she became very nervous, was unable to sleep; had to miss her work; that her health was adversely affected.

H. F. McCormack, father of complainant testified. He was captain of police in Vicksburg. He said that the second month of the marriage his daughter came home crying; was extremely nervous because of the actions of her husband; that he was instrumental in getting the parties to try again to live together; that they resided in his home for a while before they separated the last time; that defendant was working at night; that he drank some; that he would "come home and sleep a few minutes in the morning, and would jump up and begin to get angry, and cursing around the house, and she was crying, and that went on for a while, and they finally separated again—and we got them back together a third time * * * and that didn't last but a week." Referring to the defendant, the witness said: "His dis-

position is very bad, you just can't do anything with him when he gets in a nervous state." He said that one night he overheard abusive and vile language being used by defendant toward complainant in another room, and he was forced to invite him to leave. He described the effect upon the complainant in these words: "Well, she would be in a nervous condition, crying, and you couldn't do anything with her—when George would come around she would go to pieces." ·

Section 105, Divorce and Separation in Mississippi, by Amis, defines cruel and inhuman treatment under the statute in these words:

"The language of the statute is 'habitual cruel and inhuman treatment', and the rule of construction is that each word used therein must be considered and given effect, in arriving at the legislative intent. Roseberry v. Northsworthy, 135 Miss. 845, 100 So. 514; Robertson v. Oil Co., 141 Miss. 356, 106 So. 449; Henderson v. Blair, 102 Miss. 640, 641, 59 So. 856. Following that rule, the necessary implication is that ▆▆ the treatment accorded to the complaining spouse must be something more than mere unkindness or rudeness, something more than mere incompatibility, want of affection, or lack of civil attention. Humber v. Humber, 109 Miss. 216, 68 So. 161. The conduct of the offending spouse must be so unkind as to be cruel, that is so unreasonably harsh and severe as, naturally and reasonably to inflict pain or suffering on the other. Indeed, it must be so cruel, so harsh and severe, as to be inhuman, that is so lacking in human qualities, so unfeeling or brutal as to endanger life, limb, or health. And finally such conduct must be habitual, that is done so often, or continued so long, that its recurrence may be reasonably expected whenever occasion or opportunity presents itself. Johns v. Johns, 57 Miss. 530; Forrester v. Forrester, 101 Miss. 155, 57 So. 553; Crutcher v. Crutcher, 86 Miss. 231, 38 So. 337;

Russell v. Russell, 157 Miss. 425, 128 So. 270; Manning v. Manning, 160 Miss. 318, 133 So. 673.''

While we are always reluctant to reverse a chancellor, yet we cannot escape the conclusion that the related acts, uncontradicted, bring this case within the quoted rule, and the cause should be reversed and tried upon full development of the merits.

Reversed and remanded.

**Hall, Lee, Arrington,** and **Ethridge, JJ.**, concur