SHARPLING *v.* SHARPLING

No. 43294 January 18, 1965 170 So. 2d 558

*Norman B. Gillis, Jr.,* McComb, for appellant.

*Roach & Roach,* McComb, for appellee.

BRADY, TOM P., J.

This is an appeal by Mrs. Mildren Quin Sharpling from a decree of the Chancery Court of Pike County, Mississippi, which dismissed her bill of complaint on December 21, 1963. The original complaint was for a divorce, charging cruel and inhuman treatment on the part of the defendant and appellee, praying for the care and custody of one minor daughter, Nancy Quin Sharpling, fifteen years old, and for reasonable maintenance and support for the minor child and for alimony for the appellant. Complainant also prayed for legal equitable division of property alleged to be owned by the appellant. After all testimony was heard and the trial concluded, the chancellor found in favor of the appellee and dismissed the bill of complaint. From the decree this appeal is prosecuted.

The error which appellant assigns is that the chancellor was manifestly wrong in failing to find from the evidence ample proof of habitual cruel and inhuman treatment. Appellant's bill charged the appellee had been guilty of habitual cruel and inhuman treatment in that he had habitually drunk intoxicating liquors to excess, and when under the influence of such intoxicants he had habitually beaten, struck, bruised, cursed and

abused complainant. She charged furthermore that the appellee had on frequent occasions done bodily harm to her, and had threatened to do even more serious bodily injury.

The appellee in his answer denied each and all of the charges, and pled affirmatively that he had been able to keep his family together in spite of the fact that the appellant is an emotionally unstable person and is unable to live harmoniously with her minor daughter.

The record discloses the following melancholy facts: The appellant testified in her own behalf, and offered one corroborating witness, Dr. W. C. Winans, the county health department officer for Pike County, who testified only as to her health. The appellant testified that her difficulty began in 1953, at which time she and appellee had had an argument. In the altercation a few licks were passed. Appellant testified that she passed a few, and he passed a few and she fell on the bed. She stated that he then took up a chair and beat out all the lights in the house. Appellant testified that the defendant had been continually and habitually drinking intoxicating liquors every day. She testified further to another incident which occurred in July 1963, some ten years later. On the last occasion he came home with a fifth of whiskey which he left in his truck while he went to a barber shop and which she brought into the house while he was gone. When he returned from the barber shop she showed it to her daughter and an argument and scuffle ensued with reference thereto. Appellant charges that appellee took the whiskey away and drew the bottle back as if to strike her, but that the daughter stepped in between them and stopped the tussle. Appellant testified that she called the police on this single occasion, and that two policemen came to the house and took the appellee out of the house and talked to him, and he said he would behave. Appellant's testimony is to the effect also that she told the police, "it would be all right if he would behave, for them not to

arrest him." The appellee denied the assertions of the appellant, and stated that he had never struck his wife with any instrument or with his hand at any time during their marriage of twenty-nine years. He admitted that a friend had given him a fifth of whiskey in July 1963, but that he did not carry the whiskey into the house; that while he had gone to a barber shop the appellant had brought the whiskey in the house and showed it to their daughter. He denied he attempted to strike her with the whiskey. He testified that he did not do her any violence and did not tear up the house, but that he did ask his wife for the whiskey, and endeavored to take the whiskey from her. He admitted that he has had to protect himself from her assaults; that his daughter has had to intercede in his behalf and that she tried to get her mother not to fight him. Finally he was forced to tell her that she would have to quit doing so, that that was one thing he would not tolerate any longer.

Nancy Sharpling, the daughter of the appellant, corroborated the testimony of her father, the appellee, insofar as his actions and statements are concerned, with reference to these difficulties. The record fails to disclose that there had been any other whiskey episode similar to this one, during the twenty-nine years of married life of the parties hereto. The daughter corroborated the fact that that was the only time she ever saw whiskey around the house. The daughter's testimony indicates that Mrs. Sharpling was instrumental in precipitating the difficulty; that she assaulted her husband by pulling his hair and slapping him "real hard" and "real bad" and that all this time he was trying to prevent her from hitting him and pulling his hair; that he did not try to strike her mother with the bottle, that he has never struck her, but that once he shoved her from him and she fell.

The daughter further testified that it was her mother who began these arguments and scrapes. The only vio-

lence which the daughter had ever seen her father exhibit toward the appellant was on one Saturday morning when she heard them arguing and she had walked out of her room into the living room and saw her mother fighting again with her daddy; that her father did not hit her mother, but he pushed her and she fell on the heater and bruised her cheek; that all that the appellee did was to push her out of the way. She testified that she had interceded to try to get her mother off of her father; that her father did not try to strike her mother. She stated she had never smelled liquor on his breath. Finally she testified that, if she had to make a choice, she would live with her father; that she was not going to live with her mother.

Appellant's sister, Mrs. Marie Quin Powell, testified that she had never seen or heard of Mr. Sharpling mistreating appellant in any way. She had never known him to be a violent man. The only difficulty she had ever heard of was the scrap that they had last summer, meaning the July 1963 incident, and she said, "I just heard that, and I don't believe it, so it didn't matter." She testified further that she always thought that the appellee was just as good to her as he could be.

Mr. Hewitt Quin, brother of the appellant, testified that his sister, appellant, never complained to him or showed him any injuries she had received from the alleged blows of the appellee. He testified further that he had been in their home many times and he had never seen the appellee mistreat the appellant. Appellant, on cross-examination, though she had testified on direct that the appellee had been drinking every day, admitted that it was ten years ago, and it was the first time she had seen the appellant drunk, and that the next time she saw him drunk was in July 1963.

The daughter testified that her father was not an habitual drinker and that she had only seen whiskey in the house one time, which was during the July 1963

incident. The sister, Mrs. Marie Quin Powell, testified that she had never seen him ''when I thought he was drinking'', and she had never smelled any (whiskey) on his breath and she had never heard anyone say that he was drinking. The brother of appellant, Mr. Hewitt Quin, testified that he had never seen appellant drink or smelled it on him and had never known him to be considered a drinking man.

Appellant testified that due to all this alleged treatment she had been afraid of him, but the record discloses that during all this time she lived with the appellant under the same roof, together with their daughter, and did so prior to and subsequent to the two alleged incidences complained of. They ate their meals together, used the same automobile, had the same joint bank account and participated in the other customary incidents of living together. Appellant relied upon a letter from Oschner Clinic in which it was stated, ''I am sure that they (environmental problems) have an effect on her general health,'' and she relied also upon the testimony of Dr. W. C. Winans, the county health officer, who stated that her home life was adversely affecting her health. This testimony is urged by appellee as proof of the fact that it was undisputed that, as the result of those years of abuse, the appellant was suffering from fear, anxiety and severe emotional and physical difficulties. The record discloses that she has been physically ailing; she had a hysterectomy, and had gone to frequent doctors making complaints; that she has a nervous condition and therefore she has been emotionally upset. She also suffers with a thyroid trouble and has had to reduce her weight considerably. She has also had kidney troubles. Her own family thought it was best to have her examined by a psychiatrist, Dr. Beverly Smith of Jackson, after the surgery, and she was taken to the Baptist Hospital in Jackson, Mississippi where she was treated for fourteen days, the ap-

pellee claiming he paid $1,000 for fourteen shock treatments. The record shows the appellee has worked continuously for the Highway Department since he was married; that he is superintendent of personnel for equipment maintenance. He has missed but a few days from work during this period of time. The record shows he has provided well for his wife and daughter and that the appellant continued to live in the home with appellee in spite of her alleged fear.

An objective review of this lamentable case, together with the authorities, convinces us that the chancellor was eminently justified in dismissing the bill of complaint. The appellant has wholly failed to prove that the appellee was guilty of habitual cruel and inhuman treatment of the appellant to such degree and of such duration as would permit her, under the decisions of this Court, to be granted a divorce. There is no record whatsoever of any conduct on the part of the appellee which could be classified as being dangerous to life, limb or health or that should create a reasonable apprehension of such danger. The record reveals her problems to be systemic, not of domestic environmental origin. Howard v. Howard, 243 Miss. 301, 138 So. 2d 292 (1962); Chambers v. Chambers, 213 Miss. 71, 56 So. 2d 33 (1952); Stringer v. Stringer, 209 Miss. 326, 46 So. 2d 791 (1950); Price v. Price, 181 Miss. 539, 179 So. 855 (1938); Long v. Long, 160 Miss. 492, 135 So. 204 (1931); Russell v. Russell, 157 Miss. 425, 128 So. 270 (1930); and Ammons v. Ammons, 144 Miss. 314, 109 So. 795 (1926).

The decree of the Chancery Court of Pike County is therefore affirmed.

Affirmed.

*Lee, C. J., and Ethridge, Patterson and Inzer, JJ.,* concur.