271 So.2d 90 (1972)
Mary Katherine BURNETT
v.
Henry BURNETT, Jr.
No. 46859.
Supreme Court of Mississippi.
December 18, 1972.
Rehearing Denied January 15, 1973.
Ramsey, Bodron & Thames, Vicksburg, for appellant.
Prewitt & Braddock, Vicksburg, for appellee.
*91 RODGERS, Presiding Justice.
Henry Burnett, Jr. filed an original bill in the Chancery Court of Warren County, Mississippi, in which he sought a divorce from his wife Mary Katherine Burnett upon the ground of cruel and inhuman treatment. Mrs. Burnett answered the bill and filed a cross-bill in which she sought a *92 divorce from her husband, the appellee. She also based her claim for a divorce upon the alleged cruel and inhuman treatment of her husband.
The chancellor heard the evidence. He dismissed appellant's cross-bill and granted Mr. Burnett a divorce. He refused to allow appellant alimony, but did allow one hundred dollars ($100.00) per month child support and three hundred fifty dollars ($350.00) attorney's fee.
The record shows that the Burnetts had been married twenty-six (26) years at the time of their separation. They had two (2) children born to them: Kate Louise, born July 26, 1950 and Paul Vander, born September 15, 1954. Paul Vander Burnett is living with his mother. He is seventeen (17) years of age and is a senior in high school. Prior to their separation, the appellee had allowed his wife one hundred eighty dollars ($180.00) per month to run the house. He had paid the gas bill, but appellant had paid the rent of thirty-three dollars ($33.00) on their rented apartment. The appellee has an income of ten thousand nine hundred and fifty dollars ($10,950.00) per year. The appellant has an annual income of approximately one thousand three hundred eighty-nine dollars and seventy cents ($1,389.70).
Mr. Burnett testified that he had undergone a gall bladder operation more than twenty (20) years before the separation. At that time, his health was such as to prevent his joining the army reserve corps. Since 1955, however, he has passed several physical examinations by army doctors. The appellee contends that during the time he was sick his wife would not prepare the proper food required by his diet. He contended that it was necessary for him to eat breakfast at his sister's home. He said his wife quarreled and they had "spats". He contended that she was trying to get even with him for a disagreement and separation they had while they were teen-age sweethearts.
The appellant denied that she would not prepare appellee's meals, but admitted that he did go by his sister's for breakfast on some occasions. She admitted that she did try to make her husband cry because of the way he had treated her when they were teen-age children. She pointed out that they fussed, but that her husband spent too much time with another woman; that he would stay away from home and would often go to other cities, but would not take her with him. She admitted she refused "relations" with her husband on several occasions, but that a few nights before he left appellant, they did have "relations". After appellee left home, appellant wrote a letter to him asking him to forgive her and give her at least part of his love.
Are these facts sufficient to establish the charge of cruel and inhuman treatment? The chancellor thought they were sufficient to establish the charge and granted a divorce.
The general rule as to what facts are necessary to establish the charge of cruel and inhuman treatment under the statute is clearly announced in a long list of cases in this state. The rule is as follows:
"... [T]he necessary implication is that the treatment accorded to the complaining spouse must be something more than mere unkindness or rudeness, something more than mere incompatibility, want of affection, or lack of civil attention. The conduct of the offending spouse must be so unkind as to be cruel, that is, so unreasonably harsh and severe to be inhumane, so lacking in human qualities, so unfeeling or brutal as to endanger, or put one in reasonable apprehension of danger to life, limb, or health. And finally, such conduct must be habitual, that is, done so often, or continued so long, that its recurrence may be reasonably expected whenever occasion or opportunity presents itself." Bunkley and Morse, Amis on Divorce and Separation *93 in Mississippi, § 3.14(3), p. 114 (1957). Cited in McBroom v. McBroom, 214 Miss. 360, 363, 58 So.2d 831, 832 (1952).
See also Taylor v. Taylor, 235 Miss. 239, 247, 108 So.2d 872, 875 (1959); Skelton v. Skelton, 236 Miss. 598, 603, 111 So.2d 392, 393-394 (1959); Stringer v. Stringer, 209 Miss. 326, 330, 46 So.2d 791, 792 (1950); Russell v. Russell, 157 Miss. 425, 430-431, 128 So. 270, 272 (1930).
In discussing habitual cruel and inhuman treatment as grounds for divorce, we said in Howard v. Howard, 243 Miss. 301, 303-304, 138 So.2d 292, 293 (1962)
"The popular idea is that, like charity, it covers a multitude of marital sins, and is the easiest road to freedom from the marital bonds. As a result suits are often brought, based on petty indignities, frivolous quarrels, general incompatibility and the petulant temper of one or both parties, seeking divorce for habitual cruel and inhuman treatment, without ever realizing or understanding, in the remotest degree, what is meant by the words as used in the statute. They do not realize the nature, gravity, or duration of the cruelty required to warrant a divorce. * * * The cruelty required by the statute is not such as merely to render the continuance of cohabitation undesirable, or unpleasant, but so gross, unfeeling and brutal as to render further cohabitation impossible, except at the risk of life, limb, or health on the part of the unoffending spouse; and that such risk must be real rather than imaginary merely, and must be clearly established by the proof."
The burden of proof to establish the charge alleged as a ground for a divorce is upon the complainant.
"The burden rested upon appellee to prove by clear and convincing evidence that the conduct of the appellant was not only cruel but that it endangered, or adversely affected, his health or safety and, further, that it was the proximate cause of the separation. Scott v. Scott, 219 Miss. 614, 69 So.2d 489 (1954); Bunkley and Morse, Divorce & Separation in Mississippi, § 3.14(17) (1957)." Criswell v. Criswell, 254 Miss. 746, 753, 182 So.2d 587, 590 (Miss. 1966).
There is conflicting evidence between the testimony of the appellant and appellee. Appellant is corroborated to some extent by her daughter with reference to the quarrels or "spats" between the parties. Appellee is corroborated by the testimony of his sister as to appellee's having breakfast at her home. Appellant's letter admitted that she had been at fault. Appellee did not deny "relations" with appellant just a few nights before he left home.
As a general rule, this Court will not reverse the chancellor upon a disputed statement of facts, but where the testimony for the complainant taken at its best is insufficient to establish the charge for divorce set out in the bill of complaint, or where the chancellor's decision is manifestly wrong as to law or fact, this Court must reverse the decree of the court.
In Scott v. Scott, 219 Miss. 614, 630, 69 So.2d 489, 494 (1954) we set out this rule in the following language:
"It is only in rare cases that this Court will reverse a chancellor upon a disputed question of fact. But when the chancellor's decision in a divorce case appears to be manifestly wrong, this Court has not hesitated to reverse the decree of the chancellor. Ammons v. Ammons, 144 Miss. 314, 109 So. 795; Russell v. Russell, 157 Miss. 425, 128 So. 270; Long v. Long, 160 Miss. 492, 135 So. 204; Price v. Price, 181 Miss. 539, 179 So. 855; Stringer v. Stringer, 209 Miss. 326, 46 So.2d 791; Chambers v. Chambers, 213 Miss. 71, 56 So.2d 33."
In the case of Rainey v. Rainey, 205 So.2d 514, 515 (1967), we made the following observation:
"The credibility of the witnesses and the weight of their testimony, as well as the *94 interpretation of evidence where it is capable of more than one reasonable interpretation, are primarily for the chancellor as the trier of facts. The issue here was a factual one and the chancellor's decision will not be disturbed since it was not manifestly wrong."
Taking into consideration all of the testimony most favorable to the complainant husband, there still remains the fact that he continued to live with his wife, the appellant, long after his alleged gall bladder operation and had sexual "relations" with her. At most  the quarrels between the parties were simply the usual domestic disagreements. It is obvious that the husband simply did not recognize nor understand the change occurring to some wives during the difficult period of their lives. There is really nothing shown in this record on which the chancellor could grant a divorce to either party. The divorce decree should not have been granted; it is against the overwhelming weight of the testimony, since the evidence does not reach that degree of cruelty required to establish habitual cruel and inhuman treatment. See Bunkley and Morse, Amis on Divorce and Separation, Section 3.14(2), pp. 113-114 (1957).
The appellee's cross-bill prays for a divorce and alimony. She, like her husband, is not entitled to a divorce under the facts in this case. The chancellor was correct in his decision to dismiss her cross-bill as to the prayer for a divorce. He was also correct in awarding support money and custody of their minor son to the appellant, Mrs. Burnett.
Inasmuch as we have held that no divorce should have been granted in this case, no alimony can be allowed. Section 2743, Mississippi Code 1942 Annotated (1956). On the other hand, separate maintenance of the wife, Mrs. Burnett, is indicated by the evidence; but new pleadings or other pleadings will have to be instituted in view of the fact that Mrs. Burnett did not pray for separate maintenance in the alternative in her cross-bill. See Lakey v. Lakey, 218 Miss. 697, 67 So.2d 711 (1953).
Appellant is entitled to an additional sum of money to pay her attorneys for their work in filing briefs and arguing her case on appeal. We, therefore, allow judgment against the appellee, Henry Burnett, Jr., as attorney's fee in favor of Mrs. Burnett in the sum of one hundred and seventy-five dollars ($175.00).
The decree of the chancery court will be reversed as to the granting of a divorce to Mr. Burnett. It will be affirmed as to the custody and support of Paul Vander Burnett. She is awarded a judgment against Mr. Burnett for the sum of one hundred and seventy-five dollars ($175.00) additional attorney's fee. We remand the case to the chancery court for further proceedings, not inconsistent with the foregoing opinion.
Affirmed in part, reversed in part, and remanded.
PATTERSON, SMITH, SUGG and BROOM, JJ., concur.