ISHEE, J.,
DISSENTING:
¶22. The majority would uphold the chancellor’s findings as to both Ursel’s award of separate maintenance, and the dismissal of Wayne’s counterclaim for divorce on the ground of habitual cruel and inhuman treatment. Finding error below, however, I respectfully must dissent.
I. Separate Maintenance
¶ 23. As the majority acknowledges, Wayne asserts that the chancellor erred in awarding Ursel separate maintenance because the court disregarded requests for admissions that had previously been deemed admitted for failure to timely respond; as a result, he argues the matters were conclusively established, thus preventing Ursel from proving the essential elements of her claim. I agree.
¶24. Regarding separate maintenance, our supreme court has stated:
[T]he jurisdictional basis of a separate-maintenance decree stems from equitable principles first laid down in Mississippi in Garland v. Garland, 50 Miss. 694 (1874). The very power of the court to grant separate maintenance was based upon the following two requirements: (1) a separation without fault on the part of the wife, and [ (2) ] the husband’s willful abandonment of her with refusal to provide support to her. Rodgers [v. Rodgers ], 349 So.2d [540,] 541 [ (1977) ]. The Rodgers court explained that these two requirements must be satisfied in order for the court to possess the equitable power to order separate maintenance. Id.
Jackson v. Jackson, 114 So.3d 768, 775 (¶ 17) (Miss. Ct. App. 2013) (emphasis added). Our supreme court has also held: “While the law does not require a wife who leaves her husband to be blameless, misconduct on her part which materially contributes to the separation, so that it may *1289 be said that the fault of the wife is equal to or greater than that of the husband, ... is a defense to her suit for separate maintenance.” King v. King, 246 Miss. 798, 152 So.2d 889, 891 (1963) (citing Hilton v. Hilton, 88 Miss. 529, 41 So. 262 (1906)).
¶ 25. Following the requests for admissions submitted by Wayne to Ursel, Ursel failed to timely respond and, therefore, the court deemed the requests admitted. Certain requests deemed admitted stated the following:
REQUEST NO.l: Please admit that [y]our course of conduct is a material factor in the separation of the parties at least equal to, if not greater than, that of [y]our husband.
REQUEST N0.4: Please admit that separation of the parties was not without fault bn [y]our part.
REQUEST N0.5: Please admit that [y]our husband did not and has not willfully abandoned [y]ou with refusal to provide support to [y]ou.
¶ 26. As noted by the majority, Rule 36 of the Mississippi Rules of Civil Procedure governs requests for admissions. Under the rule, a matter will be deemed admitted if the party the request was served upon does not timely respond or file an objection. M.R.C.P. 36(a). A timely response is one made within thirty days. See id. The matter is then conclusively established unless the court allows a withdrawal or amendment. M.R.C.P. 36(b). “A matter that is deemed admitted does not require further proof.” Locklear v. Sellers, 126 So.3d 978, 981 (¶ 7) (Miss. Ct. App. 2013). Most important here, however, is the guidance set forth in the advisory committee’s note to Rule 36, which reads:
Rule 36 will be enforced according to its terms; matters admitted or deemed admitted upon the responding party’s failure to timely respond are conclusively established unless the court, within its discretion, grants a motion to amend or withdraw the admission. “Any admission that is not amended or mthdrawn cannot be rebutted by contrary testimony or ignored by the court even if the party against' whom it is directed offers more credible evidence.” DeBlanc [v. Stancil], 814 So.2d [796], 801 [(Miss. 2002) ] (citing 7 James W. Moore, et al., Moore’s Federal Practice ¶ 36.03[2], at 36 (3d ed. 2001)).
M.R.C.P. 36 advisory committee’s note to 2014 amendment (emphasis added).
¶27. Thus, because Wayne’s requests for admissions were deemed admitted by the chancellor, he argues that it was erroneous for the chancellor to ignore those admitted requests, and instead rely upon trial testimony regarding the merits of Ursel’s separate-maintenance claim. I agree, as Rule 36 explicitly prohibits such. Wayne objected to this issue during trial when Ursel began giving contradictory testimony regarding Wayne’s refusal to support her; yet, the chancellor stated:
Well, the only problem is the court can allow [the requests] to be confessed, but when I’ve heard something contrary to the testimony from [Wayne,] namely, I left and said I’m not coming back, then I have to proceed with what I’ve heard in sworn testimony.
As the advisory-committee note makes clear, however, “[a]ny admission that is not amended or withdrawn cannot be rebutted by contrary testimony or ignored by the court even if the party against whom it is directed offers more credible evidence.” Id. Therefore, because the record reveals no such motion to amend or withdraw was made by Ursel, the admissions could neither be ignored nor rebutted by testimony at trial. See id. Furthermore, the fact that *1290 Wayne offered contradictory testimony— namely, that he did willfully abandon the marital home (for Ursel’s refusal to assist him during medical emergencies)—is of no consequence, as the admissions are only binding upon- the party against whom they are offered. See Shell Oil Co. v. Murrah, 493 So.2d 1274, 1277 (Miss. 1986) (holding that the purpose of Rule 36 is to bind the party making the admission, not the party requesting it). Thus, the chancellor’s statement, wherein she valued trial testimony over the requests for admissions, was improper, as she did not give the required weight to the respective admissions.
¶ 28. The majority, however, finds otherwise. Instead, it would affirm the chancellor’s disregarding of Rule 36. In doing so, it points to Wayne’s third request for admission, which stated: “Please admit that there is no significant conduct on [y]our part that negatively impacts the enjoyment of the marriage contract.” Relying on this request alone, the majority argues that the' admitted requests produced overall contradictory results—therefore, the matter of Ursel’s separate-maintenance claim was not conclusively established. As a result then, the majority asserts the chancellor was well within her discretion to rely on trial testimony to resolve any conflicts found within these requests. Citing no authority to support this proposition (and having found none myself), however, I find this argument wholly unpersuasive.
¶ 29. Put simply, the request from which the majority erects its argument is not an essential element of a claim for separate maintenance. See Jackson, 114 So.3d at 775 (¶ 17). And so, whether contradictory or not, under Rule 36, the requests were all admitted. And though “Rule 36 provides a harsh penalty for the failure to comply,” requests four and five of those deemed admissions encompassed the essential elements of Ursel’s claim for separate maintenance—a claim upon which she bore the ultimate burden of proof. Hawkins v. Hale, 185 So.3d 1076, 1078 (¶ 7) (Miss. Ct. App. 2016).
¶ 30, Thus, Wayne’s requests for admissions were deemed admitted for Ursel’s failure to timely reply. The power'to deem those requests admitted was well within the chancellor’s discretion, which we clearly acknowledge. See Scoggins v. Baptist Mem’l Hosp,-Desoto, 967 So.2d 646, 648 (¶ 8) (Miss. 2007) (holding “[a] certain amount of discretion is vested in the trial judge with respect to whether he' or she will take matters as admitted”). To this point, however, the majority apparently mischaracterizes my acknowledgment that a chancellor possesses this discretion and conflates this acknowledgment with my overall conclusion here that the chancellor erred—to be clear, I find no abuse of discretion on the chancellor’s part in deeming these requests admitted for failure to timely reply. It appears, however, that the majority blends this discretion “pre-admit-tance” .with that of “post-admittance.” Make no mistake, the - chancellor here deemed all the requests admitted—and that being the case, she could, not pick and choose which requests to keep or disregard post-admittance (as the majority seems to assert); only upon a permitted motion to amend, or withdraw could those originally admitted requests be overlooked by the court. See M.R.C.P. 36(b). .
¶ 31. As such, being conclusively established, and .with no motion to amend or withdraw having been made, I find the chancellor committed reversible error—in both her disregarding of the admitted requests for admissions- as well as her subsequent awarding of separate maintenance to Ursel. To that end, I would reverse and render as to this issue, and in doing -so, urge this Court to recall that a rule not enforced is no rule at all. -
*1291 II. Habitual Cruel and Inhuman Treatment
¶ 32. In Rakestraw v. Rakestraw, 717 So.2d 1284 (Miss. Ct. App. 1998), this Court reiterated the long-held principle that:
Habitual cruel and inhuman treatmént may be established by a showing of conduct that either (!) endangers life, limb, or health, or creates a reasonable apprehension of such danger, rendering the relationship unsafe for the party seeking relief, or (2) is so unnatural and infamous as to "make the marriage revolting to the non-offending spouse and render it impossible for that spouse to discharge the duties of marriage, thus destroying the basis for its continuance.
Rakestraw, 717 So.2d at 1287 (¶ 8) (citing Daigle v. Daigle, 626 So.2d 140, 144 (Miss. 1993)). “[S]uch conduct must be habitual, that is, done so often, or continued so long, that its recurrence may be reasonably expected whenever occasion or opportunity presents itself.” Burnett v. Burnett, 271 So.2d 90, 92 (Miss. 1972). “Although the cruel and inhuman treatment usually must be shown to have been ‘systematic and continuous,’ a single incident may provide grounds for divorce.” Rakestraw, 717 So.2d at 1287 (¶ 8). “While ordinarily one act or an isolated incident will not establish a charge of habitual cruel and inhuman treatment, one incident of personal violence may be of such a violent nature as to endanger the life of the complainant spouse and be of sufficient gravity to establish the charge of habitual cruel and inhuman treatment.” McKee v. Flynt, 630 So.2d 44, 48 (Miss. 1993). “[T]he charge ‘means something more than unkindness or rudeness or mere incompatibility or want of affection.’ ” Rakestraw, 717 So.2d at 1287 (¶ 8) (quoting Daigle, 626 So.2d at 144). Habitual cruel and inhuman treatment must be shown by a preponderance of the evidence. Shavers v. Shavers, 982 So.2d 397, 403 (¶ 35) (Miss. 2008).
¶ 33. “The party alleging cruel and inhuman treatment typically must corroborate the testimony.” M Nonetheless, “[c]orrob-orating evidence need not be sufficient in itself to establish habitual cruelty,' but rather need only provide enough supporting facts for a court to conclude the plaintiffs testimony is true.” Smith v. Smith, 90 So.3d 1259, 1263 (¶ 12) (Miss. Ct. App. 2011) (citing Jones v. Jones, 43 So.3d 465, 478 (¶ 30) (Miss. Ct. App. 2009) (quoting Deborah H. Bell, Bell on Mississippi Family Law § 4.02[8][d] (2005))).
¶ 34. On appeal, Wayne asserts that the chancellor erred in denying his claim for divorce because he proved, by a preponderance of -the evidence, with corroborated testimony, that Ursel’s conduct endangered his life; limb, and health, thus creating a reasonable apprehension of such danger, and thereby rendering the relationship unsafe for him. Based upon the evidence presented surrounding Wayne’s medical emergencies, I agree.
¶ 35. Wayne testified that at four separate times, he experienced medical emergencies while at home, and that Ursel refused to assist him in seeking medical treatment during each instance. Though Ursel denied refusing to assist Wayne on three of those occasions, she corroborated Wayne’s testimony by admitting that she refused to assist Wayne during at least one of those times. Wayne testified further that on three of those occasions—other than the instance in which Ursel admitted to refusing—he had to rely on Deloris, Murdoch, and himself for transport to receive emergency medical treatment.
¶ 36. At trial, Deloris testified that while at the Williamses’ home in February 2013, Wayne began experiencing trouble breathing. When Wayne asked for Ursel’s assistance with his oxygen, Deloris stated that *1292 Ursel told Wayne, “I will be glad when you go ahead and die and get it over with.” Deloris further testified that later, around August 2013, Wayne called her requesting assistance because Ursel would not help him while he was having severe chest pains. Deloris also said that when she arrived to pick up Wayne, Ursel yelled out at him, “I hope you die,” as well as other explicit language. In addition, Deloris testified that, while with Wayne and Ursel following a medical procedure of Wayne’s, Ursel asked the doctor, “Why didn’t you just let him die?” Lastly, Deloris stated that Ursel threatened Wayne, and told him “the next time he got on his motorcycle, she hoped he had a wreck and die[d].” Murdoch also testified to assisting Wayne at various times for emergency medical needs, but never saw Ursel on those occasions, and thus, did not provide corroborating testimony with respect to her alleged conduct.
¶ 37. During the fourth and final occasion, however, Wayne experienced a heart attack. He testified that Ursel told him, “You can sit there and die, you S.O.B.” With no available assistance, he was forced to drive himself on his motorcycle from Moselle, Mississippi, to Hattiesburg, Mississippi. Rather than return home following his release from the hospital, Wayne opted to reside at Deloris’s home, and has resided there since. Following the conclusion of testimony, the chancellor dismissed Wayne’s claim for divorce, and stated:
Well, you know, let me just tell you both, I know what the burden is for getting a divorce on the grounds of ha-bitúale ] cruel[ ] and inhuman treatment, and it’s just not there. Your client has failed to meet any showing with his corroborating witnesses .... [Wayne] has testified that ... since he last worked ... he has had problems with his heart, problems with his back, problems with C.O.P.D. Those illnesses themselves would have anybody apprehensive of continuing to live. Now his perception of what’s going on, it appears that his own testimony and the witnesses showed that every time he thought he was in a crisis, he could call either Mr. Murdoch ... [or Wayne] has a [motorcycle] that could have been traded for a car where he could take himself, or he had ... [Deloris] ... sitting in his house, who on occasion is available. So the Court doesn’t see—if there was a brandishment of guns, knives, something of that effect .... [T]hey both cuss and fuss and that’s it. And I don’t see that being habitual. And I don’t see that your claim for divorce is meritorious based on what the current law is, and that [m]otion [t]o [dismiss is granted. All right, so y’all will stay married to each other.
¶ 38. I disagree with this ruling by the chancellor. We are reminded that when analyzing a divorce based on habitual cruel and inhuman treatment, “there is a dual focus on the conduct of the offending spouse and the impact of that conduct on the offended spouse.” Smith, 90 So.3d at 1263 (¶ 11). “Evaluating the impact on the offended spouse is a subjective inquiry. The focus is on the effect the conduct has on the particular spouse, not its effect on an ordinary, reasonable person.” Id. Lastly, “[w]hen there is no violent conduct involved, we review the facts on a case-by-case basis, taking into account the frequency and severity of the conduct, as well as the impact on the plaintiff.” Id. at (¶ 13).
¶39. Reviewing the record before this Court, I would submit that Wayne proved, by a preponderance of the evidence and through corroborated testimony, that the effect of Ursel’s conduct endangered the life, limb, and health of Wayne. Between the dates of March 2012 and December 2013, Wayne testified to having four medical emergencies—in all four, Ursel did not provide any assistance. Ursel corroborated *1293 at least one of these occasions by admitting she refused to assist him during a life-threatening emergency. The fact that Wayne was fortunately able to rely on the kindness of others when in times of need is immaterial. Likewise, whether he could have chosen a more suitable means of transportation than his motorcycle is irrelevant to our analysis. What is more, the chancellor’s commentary related to Wayne’s illnesses—that such ailments would cause any person to have an apprehension of living—is misguided; the standard is not viewed in the objective, but rather the subjective. Id. at (¶ 11).
¶ 40. The majority, however, would find the facts of this case do not amount to habitual cruel and inhuman treatment. I respectfully disagree for all the reasons listed herein. In particular, focusing on the frequency and severity of Ursel’s conduct with respect to the subjective effect it had on Wayne, I find that Ursel’s conduct endangered the life, limb, or health of Wayne, creating a reasonable apprehension of such danger,'and thus, rendering the relationship unsafe for him. This is because it was “reasonably expected whenever occasion or opportunity present[ed] itself’ that Ursel would not aid Wayne. See Burnett, 271 So.2d at 92. Refusing to assist a spouse during severe, life-threatening medical emergencies is surely of such sufficient gravity to establish a charge of habitual cruel and inhuman treatment. As a result, I would find the chancellor erred in dismissing Wayne’s counterclaim for divorce, and therefore, reverse and remand as to this issue.
CONCLUSION
¶ 41. Upon careful review of the record, I would find the chancery court committed reversible error in both the granting of Ursel’s award of separate maintenance, and the dismissal of Wayne’s counterclaim for divorce on the grounds of habitual cruel and inhuman treatment. For these reasons, I would reverse and render the judgment awarding separate maintenance, and reverse and remand the-judgment dismissing Wayne counterclaim for divorce.
WILSON, J., JOINS THIS OPINION IN PART.